## CLEM CONST. CO. v. PARKER et ux.
### (No. 3057.)

(Court of Civil Appeals of Texas. Texarkana. April 16, 1925.)

1. **Contracts** ⬦232(3)—**Contract construed to require new agreement to bind owner of premises to pay contractor more than specified amount.**

Under contract to make certain improvements and provide labor and material to extent of $1,600, including 10 per cent. overhead charges, any additional work to be mutually agreed on, contractor expending more than $1,-600 could not recover excess in absence of separate agreement to pay it.

2. **Estoppel** ⬦83(1.)—**Affidavit by owners that work of contractor had been satisfactory held not to estop them from claiming damages for defective work.**

Fact that owners of premises without knowledge of defective work made affidavit that work by contractors had been completed to their satisfaction, for purpose of negotiating loan, did not estop them from later setting up cross-action for defective work.

3. **Estoppel** ⬦87—**No estoppel arises, unless representation acted on by other party to his prejudice.**

Unless representation of party has been acted on by other party in way different from way in which he otherwise would have acted, and to his prejudice, no estoppel arises.

Appeal from Dallas County Court, at Law; Willey H. Bell, Judge.

Action by the Clem Construction Company against C. C. Parker and wife. From a judgment for defendants, plaintiff appeals. Affirmed.

The Clem Construction Company brought the suit against the appellees to recover $500.39, the alleged excess cost of certain labor and material in making improvements upon the home of appellees, due in virtue of a written contract and in virtue of an express promise to pay that sum. The appellees answered, denying the allegations of the petition, and by cross-action sought to recover damages for breach of the contract, in so carelessly and unskillfully roofing the house as to cause it to leak, and in placing and fixing certain doors in a haphazard manner, and in failing to put in the plumbing work and to raise the floor in a good and workmanlike manner. The appellant by supplemental petition answered the cross-action and pleaded estoppel by acceptance and waiver of the matters sued on.

The case was tried by a jury on special issues, and they made the findings of fact to the effect that the construction company did not do work or furnish material outside of and not called for by the terms of the specifications and contract; that the con-

struction company failed to do the work as alleged in the cross-action; and that the reasonable cost of the material and labor to properly do such work was $362.05. In keeping with the verdict the court rendered judgment that appellant take nothing against the appellees on its suit, and that appellees recover of appellant on the cross-action the damages found of $362.05 and all costs.

The appellees, husband and wife, owned a home, and, being desirous of having certain improvements made upon it, entered into a written contract with the appellant to do same in accordance with written specifications, signed by each party, setting out in detail precisely what was to be done. The written contract between the parties states that the "party of the second part (the construction company) hereby contracts and agrees to build and construct, according to the plans and specifications this day agreed upon by the parties hereto," the "certain improvements for the parties of the first part," and "to furnish and provide all labor and material to the extent of sixteen hundred dollars, which amount is to include ten per cent. overhead expenses." Continuing, the "parties of the first part hereby agree to pay the party of the second part the sum of sixteen hundred dollars," to be evidenced by three notes secured by a mechanic's lien on the property. In the written specifications, which are a part of the contract, after stating the plans and specifications, appears the following:

"All the above mentioned work to be done according to the plans and specifications for the sum of $1,600.00, including ten per cent. contractor's overhead expense and profit."

Also there is the following addendum:

"If any additional work, other than mentioned in the specifications or shown by the plan, is done, the same must be mutually agreed upon by the owner and the Clem Construction Company and signed by them in the form of an additional contract."

Appellant's evidence went to show that it took labor and material, including 10 per cent. overhead charges, to the amount of $500.39 over and above $1,600, to complete the improvements; that appellant furnished and paid for the same; that appellees promised to pay for same. It is for this excess sum that appellant sued and asked judgment. The appellees' evidence went to show that no work was done or materials furnished that were not called for in the specifications, and that they did not promise to pay for any work or materials exceeding the amount of $1,600.

There is evidence going to support the findings of the jury in respect to the matters pleaded in the cross-action.

The appellant offered in evidence the fol-

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

lowing instrument, sworn to by the parties before a notary public:

"The State of Texas, County of Dallas.

"We, C. C. Parker and wife, do hereby declare that the improvements made for us by Clem Construction Company, a corporation, under that certain contract between ourselves and Clem Construction Company, dated ——— day of ———, 1921, and filed for record in Dallas county on the date ———, has been completed to our entire satisfaction; that the said Clem Construction Company has fully completed and carried out all the terms of said contract. This statement is made by us for the purpose of negotiating a loan of ——— dollars with ———, who has agreed to buy said note ———, and for the purpose of assuring said ——— that said Clem Construction Company has fully complied with said contract."

Further:

"O. E. Clem, secretary Clem Construction Company, being sworn, says that all labor and material used in the construction of the improvements above mentioned have been paid for, and that there are now no unpaid labor or material claims against said improvements or property upon which said improvements are situated."

The written contract has the following clause:

"It is further especially agreed and understood that the entering by the parties of the first part into possession of said improvements, or the acknowledging by them of the completion of this contract, as well as any other sufficient proof, shall be conclusive evidence that all duties and obligations of the party of the second part have been fully and completely performed."

The appellee testified:

"It was after I had signed this acceptance that the roof leaked. At the time I signed this acceptance of the job I did not know that the plaintiff was claiming I owed them $500.39. It was after I had signed the acceptance that I got a letter from the plaintiff, telling me to mail a check for that amount. I never did promise plaintiff that I would pay that $500.39. Clem Construction Company did not do a thing on my premises that is not called for in the specifications, but they did fail to do some things called for therein. They did not do any extra work at all. * * * I paid J. L. Duncan $150 for raising the house. * * * I paid Clifford Davis, of the Haskell Plumbing Company, $112.05 for rearranging the toilet and lavatory in the bathroom."

Burgess, Burgess, Sadler, Chrestman & Brundidge, of Dallas, for appellant.

Priest, Herndon & Hughes, of Dallas, for appellees.

LEVY, J. (after stating the facts as above). The two points presented on the appeal are, as stated in the appellant's brief:

"First, was the building contract a cost plus contract or a contract to do all that was called for in the plans and specifications at the fixed maximum sum of $1,600; and, second, were the appellees estopped from maintaining the cross-action by the written acceptance in evidence?"

[1] The terms of the contract obligated the appellant to do, seemingly, two things: "To build and construct" the "certain improvements," which was to be in accordance with the written plans and specifications; "and to provide all labor and material to the extent of sixteen hundred dollars, which amount is to include ten per cent. overhead charges, to be used in the construction and erection thereof." Considering this paragraph in connection with the other portion of the contract, and the clause in the agreed written plans and specifications, which is a part of the contract, there is no ambiguity in the language of the contract. The parties, by intent and effect, contemplated that the entire cost payable and to be paid of putting the specific repairs and improvements upon the house, in accordance with the plans and specifications, should be only "to the extent," meaning at a cost not above or exceeding said sum "of $1,600.00, which amount is to include ten per cent. overhead charges." In other words, by purpose and intention of the parties, the contractor was obligated to furnish as much, and no more, labor and material for putting the specific repairs and improvements upon the house as could reasonably and fairly be done within the cost of "$1,600.00, including ten per cent. overhead charges," and the owner was obligated to pay as much as, but no more than, that sum of money. In the event the work called for in the plans and specifications was completed at a cost less than "$1,600.00, including ten per cent. overhead charges," the owner was entitled, by intendment and effect, to a reduction to that extent from the $1,600. And if the sum of $1,600 was found insufficient, and more money was required, to actually cover the cost of making all of the specific repairs and improvements needed to complete the work according to the plans and specifications, then, in that event, in order to proceed further, a new agreement should stipulate the terms and conditions binding the parties. Therefore, if the appellant expended more than $1,600 in placing repairs upon the house, it could not legally recover for such excess, unless the appellees agreed to pay for same in a separate agreement, although the repairs were needed and in accordance with the plans and specifications. And there is involved in the judgment the finding of fact that the appellees did not, independent of the written contract, promise, expressly or impliedly, to pay such excess. The evidence in that respect was conflicting, and we do not undertake to review it. The suit is based entirely upon a contract to pay.

[2] As to the second ground, there was no error in the ruling of the court that the in-

strument or affidavit in evidence did not, in the facts, estop appellees from claiming damages for defective performance of the work, as is the nature of the cross-action. The appellees by their cross-action were not seeking to avoid the contract or liability thereon. They were standing on the contract, as such, seeking damages only for improper breach of performance. The testimony goes to show that at the time of the execution of the instrument the appellees did not have full knowledge of the alleged damages occasioned by the default in the proper performance of the work; and in the facts before the court his finding against estoppel, as involved in his judgment, would have support. The material may have been of inferior quality, or the work may have been imperfectly done, so as to thereby cause damage to the owner; and in such case, even had he paid for the work, the owner would be entitled to recover damages for breach of the contract. Even though the instrument purports to declare that the "Clem Construction Company has fully completed and carried out all the terms of said contract," yet this was done after the work had been done and the materials furnished, and without knowledge, as appellee says, on his part of the defective work. There was no misleading acquiescence of appellees prejudicial to the construction company, so far as the record shows. And the "acceptance," as termed, was not made in pursuance or requirement of any term of contract to do so.

[3] The rule is fundamental that, unless the representation of the party to be estopped has been acted upon by the other party in a way different from the way he otherwise would have acted, and to his prejudice, no estoppel arises. Bank v. Beilharz, 94 Tex. 493, 62 S. W. 743.

The judgment is affirmed.