## METROPOLITAN CASUALTY CO. OF NEW YORK et al. v. MEDINA RURAL HIGH SCHOOL DIST. NO. 5.

### No. 8873.

Court of Civil Appeals of Texas. San Antonio.

Oct. 19, 1932.

Rehearing Denied Nov. 16, 1932.

Terrell, Davis, Hall & Clemens and W. D. Masterson, Jr., all of San Antonio, and N. C. Walker, of San Saba, for appellants.

W. C. Baker, of Kerrville, and Morriss & Morriss, of San Antonio, for appellee.

SMITH, J.

The Board of Trustees of Medina Rural High School District No. 5, in Bandera county, employed J. C. Ray to construct a school building for the district by virtue of a written contract. Ray did the work in pursuance of his own plans and specifications, and under his bond executed by the Metropolitan Casualty Company of New York as surety. Some time after completion and delivery of the building, certain defects in the construction thereof developed, and the district brought this action for damages and recovered thereon against Ray and the surety. Both Ray and the surety have appealed.

The contract in question embraced a provi-

sion for arbitration as follows: "It is mutually agreed by the parties to this agreement that should misunderstandings arise as to the intent and interpretation of the drawings and specifications, that such misunderstandings will be referred to a board of arbitration for adjustment. * * * It is mutually agreed by the parties to this agreement that they will abide by the decisions of such arbitration board, as just above mentioned, in matters and on points as might be referred to them. No matters involving points of law will be referred to an arbitration board."

Neither party at any time invoked the provision for arbitration, and appellants urged that failure on the part of the district as ground for abatement of the action. We overrule this contention, embraced in appellants' first proposition. No "misunderstandings" are shown by pleadings or evidence to have arisen "as to the intent and interpretation of the drawings and specifications," and accordingly no occasion arose for resort to arbitration, within the contemplation of the contract. Moreover, the language of the contract was not such as to render resort to arbitration mandatory as a condition precedent to suit.

It appears that upon the completion of the building appellee went into possession and put the building to the uses for which it was constructed, and thereupon paid the contractor the balance of $2,311 due upon the contract price, which was more than the amount of damages recovered in this suit by appellee on account of the contractor's breach of said contract. It is contended by appellants that this final payment was premature and "constituted a material alteration of the building contract, and being made voluntarily and without the consent of the surety, released the surety from its liability on the bond."

We overrule appellants' contention.

The contract contained a provision that "upon final completion of the work, and upon evidence as demanded by owners that all claims for which they might be held liable have been satisfied, then the remaining ten per cent is due and shall be paid."

It was provided in the bond: "And provided that any alterations which may be made in the contract, or in the work to be done under it, or the giving by the owners of any extension of time for the performance of the contract, or any other forbearance on the part of the owners of the principal to the other, shall not in any way release the principal and the sureties, or either of them, their heirs, executors, administrators, successors or assigns, from their liability hereunder, notice to the sureties of any such alterations, extensions or forbearance being hereby waived."

The jury answered "No" to the question "Do you find from a preponderance of the evidence that the building was accepted by the plaintiff on or about December 29th, 1928, when final payment was made?"

The contract provision was that the final payment should be made upon, and therefore could not be withheld after, final completion of the work, and assurance of the district that all claims for which it might be held liable had been satisfied. There is no contention that any claims were outstanding for which the district could be held liable, and certainly the building had been finally completed. It is true, according to jury findings, that it had not been completed in a workmanlike manner in all details; but it had been completed nevertheless. It was not stipulated in the contract that the district should withhold final payment until the building was completed, free of all defects in construction, but only until it was "completed," taking that word as it is usually understood. The district did not cut itself off from the relief here sought by making the final payment when it did. Especially is this so in view of the waiver embraced in the bond, and quoted above. We overrule appellants' second and fourth propositions.

We do not think the court erred in refusing to allow appellants to ask the "jurors on their voir dire examination whether if it developed upon the trial that the work was in accord with the plans and specifications, but that there was an error in said plans and specifications, this fact would influence them in their deliberations." The question was at least far-fetched, was unreasonably speculative, and, if permitted, would have opened up unwarranted and interminable expeditions into realms of conjecture, theories, and technicalities. The trial judge acted well within his discretion when he cut off such inquiries. We overrule appellants' third proposition.

Appellant surety makes the further point that the defective workmanship of which appellee complains was open and visible to all, and that when appellee took possession of the building upon its completion, and made the final payment to the contractor, it thereby waived its right to recourse upon the surety on account of the contractor's breach of the building contract. This contention is predicated upon the theory that "the creditor owes the surety the duty of not voluntarily and negligently relinquishing funds or securities in his hands which he could lawfully apply to the debt involved." This question was raised through requests by appellant for the submission of special issues designed to develop whether the defects in the contractor's workmanship were "open and visible." The court refused these requests. The uncontroverted testimony was that appellee's trustees were farmers and stockmen who had no technical knowledge or training which would enable them to discover or recognize said de-

fects; that they made such inspection of the completed job as their experience and knowledge enabled them to make; that they could not discern and did not discover such defects, and took the contractor's assurance that none existed. The defects were in the roof only, and did not become evident until subsequent rains developed them. The district trustees then complained to appellants, who assured them that the defects would be corrected, or paid for under the obligations of the bond. In view of these undisputed facts the court did not err in refusing to submit said special issues. Appellants' fifth and sixth propositions are overruled.

Appellants complain that the case was submitted upon special issues calling for findings as to whether the contractor did the particular work complained of in a "workmanlike manner." Appellants' objection to this submission was that the contractor's obligation was to perform the work in accordance with the plans and specifications, which issue was not submitted. We overrule this contention, embraced in appellants' seventh proposition. The contractor was under the implied obligation to do all the work required of him, or performed by him, in a workmanlike manner, and his failure to do so rendered him, as well as his surety, liable for the resulting damages. This obligation was present, regardless of the primary obligation to perform the work in accordance with the specifications. Appellants' seventh proposition will be overruled, and the judgment affirmed.