## CANNADAY et al. v. MARTIN et al.
### No. 4643.

Court of Civil Appeals of Texas. Amarillo.
Oct. 19, 1936.

Rehearing Denied Dec. 7, 1936.

L. G. Mathews and Ayres & Ayres, all of Floydada, and Bledsoe, Crenshaw & Dupree, of Lubbock, for appellants.

Kenneth E. Bain, of Floydada, and Bernard Martin, of Wichita Falls, for appellees.

JACKSON, Justice.

On a former appeal the judgment obtained in this case was reversed and the cause remanded. W. I. Cannaday et al. v. J. G. Martin et al., 69 S.W.(2d) 434.

In view of the amended petition and answer, both of which present additional questions, we deem it advisable to restate briefly the original pleadings and the additions made by amendments.

On January 31, 1933, the appellees instituted this suit by filing their original petition in the district court of Floyd county, seeking to recover damages alleged to have been sustained by them because of the breach by appellants of a certain contract, evidenced by two written instruments, one for the sale of certain lots, the other for the erection of certain buildings. The two instruments, a copy of each of which is attached to the petition, constitute but one contract.

Appellees alleged that on July 9, 1928, appellants owned lots Nos. 13, 14, 15, and 16, in block 85, in the town of Floydada, and on said date they purchased from appellants, for a consideration of $10,000, lots Nos. 14, 15, and 16. That on the same day they entered into a written contract, by the terms of which they employed appellants to erect on lots 14, 15, and 16 a certain building. That in addition to the provisions for the erection of the building of appellees on the lots purchased by them from appellants, the building contract stipulated that: "It is further agreed and understood that said W. I. Cannaday and H. E. Cannaday agree themselves to complete a brick building upon lot 13 in said block No. 85 within ninety (90) days from the time

they complete building for said J. G. Martin and C. M. Martin, and that the west wall of said Martin building and the east wall of said Cannaday building shall be a joint wall, and that said wall shall be on the common line of said lots 14 and 13, and shall be half on each lot, and that said W. I. Cannaday and H. E. Cannaday are to pay said J. G. Martin and C. M. Martin for half of said wall on completion of the said building for said J. G. Martin and C. M. Martin."

The appellees alleged that the appellants conveyed to them said lots 14, 15, and 16, erected thereon the building, and paid for a one-half interest in the party wall, all of which appellees accepted in satisfaction of the contract relative to the conveyance and erection for them of a building on the lots they had purchased. That the provisions of the paragraph of the contract above quoted pertaining to the erection of a building on lot 13 are ambiguous, uncertain, and incomplete, since it fails to describe the dimensions and character of such building, but that it was agreed and understood orally that said building was to be 25 feet wide and 100 feet long, and a modern brick building of the same character as appellees' and adapted to the use of some mercantile establishment. That under the written provisions and the parol agreement, the appellants were obligated to erect such a brick building on lot 13 within 90 days from February 3, 1929, the date on which the appellees' building was completed. That the appellants wholly failed and refused to comply with the contract to appellees' damage in the sum of $7,500.

The appellees alleged that the reasonable market value of lots 14, 15, and 16 with the brick building thereon, on May 4, 1929, would have been $35,000 had appellants complied with their agreement and erected the building on lot 13, but without said building the reasonable market value of appellees' said lots and building was $27,500.

The appellants, in their original answer, urged numerous exceptions, general denial, but pleaded, however, if any oral agreement had been made it was to the effect that they should erect a building on lot 13 suitable to the requirements of any tenant, when and if such tenant might be found, and that they had been unable to find a tenant for such prospective building.

On February 14, 1935, the appellees filed their second amended original petition, repeating in substance the allegations con-

tained in their original petition, and in addition thereto pleaded that at and prior to the preparation of the written instrument appellees and appellants, as a part of the consideration therefor, had orally agreed that appellants should erect a mercantile "building of brick, twenty-five feet frontage and to extend back as deep as plaintiffs' one hundred foot, i. e., 'a business building of construction like the building to be built for J. G. Martin and C. M. Martin,' and it was the intention by plaintiffs and defendants that the said memorandum should so recite and provide, but by accident and mutual mistake of the parties such recitation and provision was omitted from said memorandum." That the parties engaged a scrivener, gave him the details of the parol agreement, including the provision "that defendants' building was to be twenty-five by one hundred feet, built of brick and to be in character of construction like that to be built for plaintiffs," but said provisions were omitted from the agreement and signed by the parties who believed all the details had been incorporated therein, and such omission was accidentally overlooked, and appellees are entitled to have said memorandum reformed so as to show the character of building which it was agreed that appellants would erect on lot 13.

On August 15, 1935, the appellees filed their third amended original petition, but made no substantial changes from the allegations of their second amended original petition, except they alleged a breach occurred on May 4, 1929, June 15, 1929, and January 20, 1933.

The appellants, in their fourth amended answer, alleged, in addition to the defenses contained in their original answer that the written memorandum relied on by appellees was too vague, indefinite, and uncertain to be enforceable, that the parol agreement alleged to make the written memorandum a contract definite and certain rendered the entire contract for the construction of a building on lot 13 a parol agreement, and that agreement and the breach thereof, if any, occurred more than 2 years prior to the filing and institution of plaintiffs' original petition, and pleaded as a defense to appellees' cause of action the 2-year statute of limitation (Vernon's Ann.Civ.St. art. 5526). The appellants further pleaded that the written memorandum was too vague and uncertain for enforcement, and the breach thereof, if any, occurred more than 4 years prior to appellees' pleading asking for a

reformation of said written memorandum, and pleaded in defense of the damages claimed the four-year statute of limitation (Vernon's Ann.Civ.St. art. 5529).

In response to special issues submitted by the court, the jury found in effect that the appellants and appellees, before the signing of the contract of June 9, 1933, "agreed upon the dimensions of the building to be constructed upon lot 13," and that said building should be "a one story brick building twenty-five feet wide and one hundred feet long"; that the failure of the contract referring to said building "to set out its dimensions was due to a mutual mistake"; that the appellants and appellees did not, before the signing of the contract of June 9, 1928, agree that the building to be constructed on lot 13 should be erected at such time as a tenant therefor suitable to the appellants and appellees could be found; that appellants, prior to the 4th of May, 1929, found a party suitable and able to lease at a fair rental the building to be constructed on lot 13; that the reasonable market value of appellees' property on May 4, 1929, without a building on lot 13, was $28,583, and, with a one-story brick building 25 feet wide and 100 feet long thereon, would have been $33,599.51; that the intrinsic value of appellees' property on January 20, 1933, without any building on lot 13, was the sum of $24,000, and, with a one-story brick building, 25 feet wide and 100 feet long thereon, would have been $29,500; that the market value of appellees' property on June 15, 1929, without any building on lot 13, was $28,500, and, with a brick building 25 feet wide and 100 feet long thereon, would have been $33,500.

On these and other findings unnecessary to set out, the court rendered judgment in the sum of $5,000, with interest and costs, against the appellants and in favor of appellees.

The finding of the jury as to the intrinsic value of appellees' property on January 20, 1933, with and without a brick building on lot 13, is immaterial because, first, intrinsic value, where the market value can be determined as in this case, is not the measure of damages; second, there is no finding by the jury that the alleged breach occurred on January 20, 1933; third, there is no finding that would toll the statutes of limitation after June 15, 1929, if complete on said date; and, fourth, the court based the damages awarded in the judgment on the values of the property found by the jury as of June 15,

1929, and appellees make no objection thereto.

The findings based on the market value of the property, with and without a building on lot 13, on May 4, 1929, is likewise immaterial.

The appellants contend that appellees' cause of action, if any they had, was barred before the suit was filed by the statute of 2 years' limitation since the written memorandum was too uncertain to be enforced, and the contract sued on was partly written and partly oral and, therefore, limitation is governed by the two-year statute. They also assert that more than 4 years elapsed between the date of the alleged breach and the date when appellees sought to reform the written instrument, and hence the cause of action was barred by the statute of 4 years' limitation.

■ It is apparently settled that the part of the contract evidenced by the written memorandum is too vague, indefinite, and uncertain for enforcement.

"A promise to erect buildings where the dimensions and plans are not specified, or which refers to plans and specifications as a part of a contract though no plans and specifications are attached, * * * 'are all too vague,' and are not of 'sufficient definiteness' * * * to be 'enforceable.' " Williston on Contracts, Revised Edition, vol. 1, pp. 120, 121, par. 42. This text is supported by the holding in Greater Houston Surb. Corp. v. Dupuy & Mullen (Tex.Civ. App.) 176 S.W. 668; Bissinger v. Prince, 117 Ala. 480, 23 So. 67; Palombi v. Volpe, 222 App.Div. 119, 226 N.Y.S. 135, and American Bridge & Contract Co. v. Bullen Bridge Co., 29 Or. 549, 46 P. 138.

In fact the appellees do not claim that the written memorandum is sufficient to authorize the recovery of damages for the breach of a contract. They concede by allegations in their original and each of their amended petitions that such written memorandum must be made certain by adding thereto the parol agreements which they claim were made before such memorandum was written. They seek to recover first on the contract which the record shows is partly written and partly oral, and in the alternative to have the court reform the written memorandum so as to contain the oral agreements omitted and thereby create a written contract certain in its terms, so a breach thereof will sustain their cause of action for damages.

■ The alleged contract relied on for recovery was made not later than June 9, 1928. The breach thereof found by the jury, and on which the court allowed damages, occurred June 15, 1929, more than 3½ years before the suit was filed January 31, 1933, and since the contract was partly written and partly oral, if the two-year statute controls, the action for damages was barred.

In Parmer County v. Smith, 47 S.W.(2d) 883, 885, Chief Justice Hall of this court says:

"The fact that these details were, by agreement of the parties, to be thereafter embodied in a written contract to be prepared by Smith, and were not incorporated into the order entered upon the minutes, shows that it was not intended by the court or Smith that such orders should evidence a completed contract. The result is that the entire contract was partly in writing and partly in parol. This being true, it is in legal effect a parol contract, and must be so construed. Harrison Building Co. v. B. F. Dittmar Co. (Tex.Civ.App.) 4 S.W. (2d) 1038, 1040; 13 C.J. 246, § 13.

"Considered alone, the orders appearing upon the minutes are too indefinite and uncertain to constitute a valid contract. 10 Tex.Jur. 175. But as held in Mecom v. Ford et al., 113 Tex. 109, 252 S.W. 491, and authorities therein cited, parol evidence was properly admitted to show the real contract, provided such evidence did not vary or contradict the written orders. Brooks v. Frio County (Tex.Civ.App.) 28 S.W.(2d) 1107.

"Under the rules above stated, we must conclude that the contract upon which this action is based is oral and not written; therefore the two years' statute of limitation applies."

In Naeve v. Shea et al., 128 Neb. 374, 258 N.W. 666, 668, the Supreme Court of Nebraska says:

" 'A contract partly in writing and partly oral is, in legal effect, an oral contract. It occurs where an incomplete writing, or one expressing only a part of what is meant, is by oral words rounded into the full contract; or where there is first a written contract, and afterward it is changed orally.' Bishop, Contracts (2d Ed.) § 164.

" 'It is a well established rule of law that, when the whole of a contract has not been reduced to writing, such a contract in its entirety is to be regarded as a parol contract, subject to all the incidents of purely

parol contracts, and proper to be proved entirely by parol testimony, notwithstanding that there may be documentary evidence of parts of it, and parts of it even may have been reduced to writing. Greenleaf on Evidence, § 284a; Jervis v. Berridge, L.R. 8 Chan., 351; Wright v. Weeks, 25 N.Y. 153.' Evans v. Schoonmaker, 2 App.D.C. 62.

" ' "A written contract is one which, in all its terms, is in writing. A contract partly in writing and partly oral is, in legal effect, an oral contract." * * * A contract cannot be said to be in writing unless the parties thereto, as well as the terms and provisions thereof, can be ascertained from the instrument itself.' Railway Pass. & Freight Conductors Mut. Aid & Benefit Ass'n v. Loomis, 142 Ill. 560, 32 N.E. 424, 426.

" 'Where a written memorandum is made of an oral contract for the sale of real property, and the terms of the contract are afterwards changed by oral agreement of the parties, the whole thereupon becomes an oral contract.' Snow v. Nelson [C.C.] 113 F. 353. See, also, Murphy v. Cicero Lumber Co., 97 Ill.App. 510; Louisville, N. A. & C. R. Co. v. Reynolds, 118 Ind. 170, 20 N.E. 711; Tishbein v. Paine, 52 Ind.App. 441, 100 N.E. 766; Brotherhood of Locomotive Firemen & Enginemen v. Corder, 52 Ind.App. 214, 97 N.E. 125; Miller v. Sharp, 52 Ind. App. 11, 100 N.E. 108; Stauffer v. Linenthal, 29 Ind.App. 305, 64 N.E. 643."

It being admitted that the agreement sued on was partly written and partly oral, and undisputed that more than 3½ years elapsed from June 15, 1929, the date of the breach on which appellees recovered, until January 31, 1933, the date on which their suit was first filed, limitation was complete and the cause of action for damages was barred before the suit was instituted.

The appellees asked for a reformation of the contract first in their second amended original petition, filed February 14, 1935, more than 5½ years after the breach on which they recovered. They claim, however, in spite of this lapse of time, that they had the right to amend their original petition and ask for reformation and recover on the contract as reformed because their original petition interrupted the running of the statute of limitation, and their amendment set up no new cause of action.

This view seems to have prevailed with the trial court, since his judgment contains this finding: "The plaintiffs are entitled to have the written contract reformed so as to show the dimensions of the building defendants agreed to construct on their said lot 13 in Block No. 85 as prayed for, and that such right of reformation is not barred by limitation."

The court reformed the agreement and awarded damages on such reformed contract.

To sustain this position appellees rely on article 5539b, Vernon's Ann.Civ.St., and numerous authorities, holding in effect that a plea of limitation is not a defense unless the amended petition sets up a new and independent cause of action, growing out of a new and distinct transaction and occurrence. In order for appellees to avoid the defense of limitation they were required to institute their suit on an existing cause of action, not one that had ended, nor one against which the running of the statute was already complete. Richardson v. Liberty Independent School District (Tex.Com. App.) 39 S.W.(2d) 823. Article 5539b became effective about August 22, 1931, some time after the bar of the 2 years' statute was complete against the contract originally sued on.

"A change in the statute of limitations, applicable to a cause of action which is Not Barred, is not within the constitutional inhibition against retroactive statutes, nor does it constitute ex post facto legislation. Thus the legislature may extend the time within which suits of a certain kind may be instituted, or it may suspend the statute, or it may remove the bar entirely. And such a provision may be made applicable to *existing causes of action.*" 28 Tex.Jur. pp. 81, 82, § 7.

"Rights which have become vested by limitation may not be divested by subsequent legislation. When a cause of action has become barred by the statute of limitations, the defendant ordinarily has a vested right to rely upon the statute as a defense, and the legislature may not divest the right by reviving the cause of action." 28 Tex.Jur. p. 83, § 8.

In Cathey v. Weaver, 111 Tex. 515, 527, 242 S.W. 447, 453, Chief Justice Cureton, speaking for the Supreme Court, says:

"Clearly, as to all barred notes not secured by deeds of trust, or other lien obligations with powers of sale, and vendor's lien notes in the hands of those not holding the superior title, the vendee against whom such notes

were held, or those in privity with him, had a vested right to plead the bar of limitation; and the Legislature would be without authority to extend the period of limitation or time to enforce the liens.

"The rule is that, while as to all causes of action not actually barred the Legislature may extend the period of limitation, yet, if rights have once become vested and perfect, the Legislature is without power to remedy or lengthen the limitation period. DeCordova v. Galveston, 4 Tex. 470; Mellinger v. Houston, 68 Tex. 37, 3 S.W. 249; Taylor v. Duncan, Dallam Dig. 514; First Nat. Bank v. Preston Nat. Bank, 85 Tex. 560, 562, 22 S. W. 579; Campbell v. Holt, 115 U.S. 620, 623, 6 S.Ct. 209, 29 L.Ed. 483; 17 R.C.L., p. 669, § 6, p. 674, §§ 15, 16; Cooley's Const.Lim. (7th Ed.) 521."

Inasmuch as the 2-year statute of limitation was complete and appellees' cause of action barred before the institution of the suit, it is manifest, we think, that appellees could not revive their cause of action for damages by amending and asking for reformation of a contract, partly written and partly oral, 5½ years after the breach upon which they relied to recover damages.

The judgment is reversed and rendered.