**J. V. LINCOLN, Appellant,**

v.

**Paul T. POHLY, Appellee.**

No. 7142.

Court of Civil Appeals of Texas.

Texarkana.

May 26, 1959.

Rehearing Denied June 16, 1959.

Kuntz & Alexander, Dallas, for appellant.

Speck, Johnson, Carlton & Alexander, Dean Carlton, Bob Johnson, Dallas, for appellee.

FANNING, Justice.

Paul T. Pohly sued J. V. Lincoln for damages for the failure of Lincoln to construct and complete a house sold by Lincoln to Pohly with good workmanship and good materials. The suit was based upon and tried upon three theories; i. e., (1) misrepresentations made by appellant's alleged agent Kaye before the purchase contract was executed on December 15, 1955; (2) misrepresentations of appellant Lincoln himself made before the conveyance of the property on January 13, 1956; and (3) breach of the implied warranty of Lincoln to construct and finish the house with good workmanship and materials.

The jury in answers to special issues submitted found to the effect: (1) That

Kaye was Lincoln's agent prior to the signing of the contract dated December 15, 1955; (2) that prior to the signing of said contract Kaye represented to Pohly that the house in question would be constructed with good workmanship and good materials; (3) that at the time Kaye made such representations defendant Lincoln did not intend to construct the house in question with good workmanship and good materials; (4) that Kaye's said representations were material representations; (5) that such representations were made for the purpose of inducing Pohly to purchase the house in question; (6) that Pohly relied on such representations; (7) that prior to Pohly's purchase of the house in question, defendant Lincoln represented to Pohly that the house in question was constructed with good workmanship and good materials; (8) that Lincoln's said representation was untrue; (9) was material; and (10) made for the purpose of inducing Pohly to purchase the house in question, and (11) that Pohly relied on such representations; (12) that on January 13, 1956, Lincoln represented the value of the premises in question to be $33,150; (13) that the actual value of the premises in question on January 13, 1956, as delivered was $25,000; (issues 14, 15 and 16 are not here material) (17) that the house in question was not constructed with good workmanship and good materials; and (18) that the house in question was not substantially completed by the defendant Lincoln.

The trial court entered judgment in the amount of $8,000 for appellee Pohly. Appellant Lincoln's amended motion for new trial was overruled and he has appealed.

Appellee presents several objections to appellant's brief and points contending that same are not briefed in accordance with the briefing rules. We deem it unnecessary to write upon this matter since it is clearly apparent from the record that this cause must be affirmed upon its merits upon one or more theories.

The answers of the jury to Special Issues Nos. 7, 8, 9, 10, 11, 12, 13, 17 and 18, are amply supported by the evidence, are not against the great overwhelming weight and preponderance of the evidence and authorize the judgment rendered by the trial court.

Appellee in addition to pleading the misrepresentations of defendant Lincoln himself also pleaded a cause of action based upon an implied warranty on the part of Lincoln to construct the house in question with good materials and good workmanship.

It was undisputed that at the time of the purchase contract of December 15, 1955, there was substantial work to be done on completing the house, which appellant Lincoln himself admitted.

We quote from the testimony of appellee Pohly as follows:

"Q. Between December 15, 1955, and January 13, 1956, did you have any conversations with Mr. Lincoln concerning the house in question? A. Yes, sir.

"Q. What were those, please? A. I became concerned about whether Mr. Lincoln was going to complete the house on time and do what he had—make the kind of a house that he told me he would make. * * * To build the fine house that he said he would build. So I went to him, and I thought that I should have—that I should take a look at some kind of specifications because I was becoming concerned about that fact. So I asked him if he had specifications, and he said, 'No, I don't have any specifications at all to the house.' He said, 'You don't have to worry. *This house will be completed right.* I take pride in my homes, and I watch every detail.' He stated that again. He said that he had been building homes for 35 years." (Emphasis added.)

We quote from the testimony of Mrs. Pohly, appellee's wife, as follows:

"Q. Then on the day of closing did you have any conversations with Mr. Lincoln? A. Yes, I certainly did.

"Q. Where did that take place? A. At the house.

"Q. The house in question? A. On Idlewood, yes.

"Q. What was that conversation? A. Well, I was upset because there was so much left undone. It still looked like a house being built. I said, 'Mr. Lincoln, we are closing this today. How can you possibly finish it for us'? He smiled and he said, 'I know it looks bad now, but it will just take me a couple of days. *I will get a crew of men here and get everything fixed up for you just right.'*" (Emphasis added.)

The evidence relating to the poor condition of the house as delivered is detailed at length by appellee Pohly in his testimony and by the testimony of the architectural expert Dean. Also some of the examples of poor workmanship and poor materials are clearly portrayed by the photographic exhibits shown in the record. It was well established by the evidence that the house was not constructed with good workmanship and good materials.

■ Also appellant Lincoln, without limitation or qualification, offered into evidence pleadings which stated:

"* * * and in such transaction defendant warranted both orally and impliedly to the plaintiff the good workmanship and materials in said house. However, plaintiff has thereafter discovered numerous defects in said dwelling, which were covered under said warranty * * * and the reasonable and necessary costs of restoring said dwelling to the condition in which the dwelling was represented to be is the sum of $8,000.00".

In Stancil v. Mills & Exports Co., Tex. Civ.App., 146 S.W.2d 787, it is stated:

"Appellant's assignments of error attack the sufficiency of the evidence to support the judgment. Appellant introduced in evidence garnishee's answer which contained, among other statements of the pleader, the paragraph quoted above. This answer he placed in evidence without any limitation. As stated in 20 Am.Jur. p. 771, § 915, 'One introducing documentary proof bearing upon an issue vouches for its accuracy so far as that issue is concerned and is, as a general rule, bound by its recitals for all purposes.' Plaintiff, having introduced in evidence these statements in the quoted paragraph without any limitation, is concluded by them. Texas & N. O. R. Co. v. Patterson & Roberts, Tex.Civ.App., 192 S.W. 585; McClung Const. Co. v. Langford Motor Co., Tex.Civ.App., 33 S.W.2d 749; 17 T.J. p. 929."

Also in this connection see Lock v. Morris, Tex.Civ.App., 287 S.W.2d 500, wr. ref., n. r. e., and authorities therein cited.

■ It was appellant Lincoln's duty to appellee Pohly, not only by the express representations made by him personally to Pohly as shown by the record, but also under an implied obligation as well, to construct and finish the house in question with good workmanship and good materials. In this connection see the following authorities: City of Huntsville v. McKay, Tex.Civ.App., 286 S.W. 305; Metropolitan Cas. Co. of New York v. Medina Rural High School Dist., Tex.Civ.App., 53 S.W.2d 1026, wr. dis.; Rowson v. Fuller, Tex.Civ.App., 230 S.W.2d 355. In Metropolitan Cas. Co. of New York v. Medina Rural High School Dist., supra (53 S.W.2d 1026, 1028), it is stated:

"The contractor was under the implied obligation to do all the work required of him, or performed by him, in a workmanlike manner, and his

failure to do so rendered him, as well as his surety, liable for the resulting damages. This obligation was present, regardless of the primary obligation to perform the work in accordance with the specifications."

Finding no reversible error in the record, the judgment of the trial court is affirmed.