**CERTAIN–TEED PRODUCTS CORPORATION, Appellant,**

**v.**

**Allen L. BELL et ux., Appellees.**

**No. 7663.**

Court of Civil Appeals of Texas.

Amarillo.

Dec. 12, 1966.

Rehearing Denied Jan. 30, 1967.

Folley, Snodgrass, Calhoun & Kolius, Amarillo, V. G. Kolius, Amarillo, of counsel, for appellant.

Monning & Monning, Amarillo, Robert R. Bradshaw, Amarillo, of counsel, for appellees.

CHAPMAN, Justice.

This is an appeal by Certain-Teed Products, Inc., a Maryland corporation with the right to do business in Texas, and which had merged with the Institute for Essential Housing, a New Jersey corporation, from a judgment based upon a jury verdict for Allen L. Bell and wife, Gladys Bell. On April 6, 1961, the Bells entered into a written contract with Institute for Essential Housing for construction on Lots Nos. 19 and 20 in Block No. 55 in University Heights Addition to the City of Amarillo, an "I.E.H." home, Model No. "Cherry Hill," perimeter type foundation, ceiling height eight feet, completed, material package No. 1 for the consideration of $10,844.23.

About June 1, 1961, the Bells moved into the house and began to notice defects in the construction the latter part of that month. Some of the poor workmanship was corrected after complaints were made but much of it was not, under the contention made by appellees. Appellant refused to make any more corrections so appellees referred the case to their attorneys in November 1961. Suit was not instituted until November 1964, thus presenting the troublesome question as to whether the cause asserted is barred by the two-year statute of limitations, Article 5526, Texas Revised Civil Statutes, or if the four-year statute, Article 5527, Texas Revised Civil Statutes is applicable.

Appellees pleaded that they entered into a contract with I. E. H.[1] whereby it agreed to furnish all labor and material to construct upon their described lots "* * * and in accordance with certain plans and specifications agreed upon by the parties the following improvements:

I. E. H. Home—Model known as Cherry Hill, with 8'0" ceiling, peremiter type foundation, completed to finish stage

all of which appears from the written contract between the parties, a copy of which is attached hereto and marked Exhibit "A" and made a part hereof." The only written contract attached is a mechanic's lien contract and deed of trust and the only plans and specifications re-

---

1. Institute for Essential Housing.

cited therein are those described in the indenture of this paragraph.

Appellees then pleaded that the house was not constructed in a good and workman-like manner in thirteen particulars, the following eight of which were submitted to the jury:

"1. Were the hardwood floors laid in a good and workman-like manner?

"2. Were part of the sheetrock walls not finished in a good and workman-like manner?

"3. Were some of the windows in the house not installed in a good and workman-like manner?

"4. Was the kitchen sink cabinet constructed in a good and workman-like manner?

"5. Were some of the baseboards not constructed in a good and workman-like manner?

"6. Was the linen closet in the bathroom not constructed in a good and workman-like manner?

"7. Was the painting on the outside of the house done in a good and workman-like manner?

"8. Was the weather stripping on some of the doors and windows not done in a good and workman-like manner?"

The jury's answers were favorable to appellees in all eight replies and an amount of damage assessed in each, totaling $1,333.25. In the motion for judgment non obstante veredicto the trial court eliminated the $92 item for correcting the kitchen sink cabinet because of lack of proof of the amount required for correction and rendered judgment for $1,241.25. It is from such judgment that appellant perfected its appeal to this court upon five points of error, the first of which contends that appellees' suit on an implied contract to build the house in a good and workman-

like manner is barred by the two-year statute of limitation.

Appellant admits by brief that the case was tried upon the theory of implied warranty but takes the position (1) that since there were no written plans and specifications attached to the contract, it was partly oral and partly written and the two-year statute of limitations applies, and (2) suits to enforce implied warranty are governed by the two-year statute of limitations.

■ We recognize the rule that a contract partly in writing and partly oral is in legal effect an oral contract, Cannaday v. Martin, 98 S.W.2d 1009 (Tex.Civ.App.— Amarillo, 1936, writ dism'd); Railway P. & F. Conductors' Mut. Aid & Ben. Ass'n v. Loomis, 142 Ill. 560, 32 N.E. 424, 426 (1892), but that is not the exact question we have under consideration here.

■ We also concede that suits to enforce implied warranties are governed by the two-year statute of limitation unless the breach of the implied warranty grows out of a written instrument, not remotely but immediately, or if the written instrument acknowledges a state of facts from which, by fair implication, the obligation or liability arises.

Appellees' position is that the contract sued upon is in writing and that the defects listed in their petition are not referred to therein as being deviations from plans and specifications, but deviations from an implied warranty of construction in a good and workman-like manner. It is true they allege I. E. H. agreed to construct upon their lots, "* * * in accordance with certain plans and specifications, the following improvements:," but the only plans and specifications or improvements mentioned were those above described. The trial court was careful not to admit any testimony concerning specific plans and specifications or specific descriptions of the model house appellees had observed between Odessa and Midland that prompted them to build the one in question. Appellees then

allege in Paragraph 4 of their Second Amended Original Petition upon which they went to trial that the house was not constructed in a good and workman-like manner.

It was stipulated into the record that no written plans and specifications were attached to the contract but counsel for appellant refused to stipulate appellant did not have plans and specifications for the house. He only stipulated that he did not have such plans and specifications in his possession. Mr. Bell testified that when he observed the back door was in the wrong place he asked for the plans and, "They always tell me, 'Well, its over to the office or over to the next building' they were building." He testified he requested the plans and specifications ten or fifteen times but never received them. He did start to testify at one time to the location of the back door in the original house plan he looked at but appellant objected and the court sustained the objection.

It has been held that regardless of the primary obligation to perform the work in accordance with the specifications, the contractor is under the implied obligation to perform such work as he does in a workman-like manner. Metropolitan Casualty Co. of New York v. Medina Rural High School Dist. No. 5, 53 S.W.2d 1026 (Tex. Civ.App.—San Antonio, 1932, writ dism'd). In this connection see also Lincoln v. Pohly, 325 S.W.2d 170 (Tex.Civ.App.—Texarkana, 1959, ref. nre); Garlitz v. Carrasco, 339 S.W.2d 92 (Tex.Civ.App.—El Paso, 1960, ref. nre); New Home Construction Corporation v. O'Neill, 373 S.W.2d 798 (Tex. Civ.App.—Dallas, 1963, ref. nre). In the latter case appellant there had claimed appellees' cause of action was based solely upon breach of a written contract to construct his house in accordance with a written warranty, while appellee contended his petition also asserted a cause of action for defects in construction. The Dallas Court of Civil Appeals said:

"We pause here to point out that non-conformity to plans and specifications is one thing; defects in material and workmanship constitute another thing. A house may be well built in all particulars, yet not be constructed in conformity with plans and specifications. On the other hand a house may conform to plans and specifications yet may eventually disclose defects in construction."

We feel these cases cited and quoted from establish the principle of implied warranty for good and workman-like construction required of the builder regardless of whether there are written specifications, but as heretofore stated, the troublesome question is whether the two-year statute of limitation applies.

No case has been cited nor have we found one directly in point under facts such as we have in the instant case, but we believe the Supreme Court of Texas[2] has announced some general principles applicable. In the case just cited it was contended that even though the constitution and by-laws of the Pressmen's Union constituted a written contract between the Union and an expelled member they did not contain any promise to do the things for the non-performance of which the suit was brought and therefore the suit was not " ' * * * one for debt where the indebtedness is evidenced by or founded upon any contract in writing,' " as provided for in our four-year statute of limitation, Article 5527. Our Supreme Court held:

" * * * it is not indispensable that the written instrument relied upon contain an express promise to do the things for the nonperformance of which the action is brought. It is sufficient if the obligation or liability grows out of a written instrument, not remotely but

2. International Printing Pressmen and Assistants' Union, etc. v. Smith, 145 Tex. 399, 198 S.W.2d 729 (1947).

immediately, or if the written instrument acknowledges a state of facts from which, by fair implication, the obligation or liability arises."

In passing upon the question of whether the two or four-year statute of limitation applied on account of the failure to develop the premises in an oil and gas lease the Eastland Court of Civil Appeals [3] held:

"It is the settled law of this state that, upon acceptance of the lease involved in this case, it became appellant's duty, upon the discovery of oil and gas in paying quantities, to develop the premises diligently for the purpose of producing such oil and gas if same could be developed profitably to appellant. * * *

"This obligation was in the minds of the parties and became a part of the written contract. The law is a part of every contract. The obligation to develop was therefore a written obligation, although not definitely expressed. * * *

\* \* \* \* \* \*

"Appellant insists that the implication to develop arises only after the exploratory or test well had been drilled; that it is an implication of law and not ·of fact, and is governed by the two-year statute of limitation, because not in writing. We cannot agree to this contention. We believe the implication to develop after drilling the exploratory well is a part of the written contract and is governed by the four-year statute of limitation. This element of damages was pleaded in the original and first amended petitions and is not barred by limitation."

In a very recent annotation in 1 A.L.R. 3rd 914 (1965) under a title covering the very subject we are discussing the text writer at p. 917, sec. 3 said:

"Thus, in an action for breach of an implied warranty in the performance of a written contract, it has been held that the warranty is implied into the writing,

and that the statute governing written contracts applies."

■ There is an abundance of evidence from a building contractor that in many instances the house was not constructed in a good and workmanlike manner. The floors buckled from lack of proper nailing; the kitchen cabinets had to be sawed into and part of them placed on each side of the back door because the door was not hung in the proper place to keep it from bumping the cabinets; the weather stripping was so poorly constructed that when it rained the water came through the windows on the north and ran down onto the floor; the doors were so improperly weather stripped that the wind whistled through them; the kitchen sink was six or seven inches too low and the drain from the sink leaked because it was too short for proper drainage; the sheetrock was not properly perfataped; no linen closet was built at completion and when complaint was made half the closet in the bedroom was taken to make the linen closet, which even then was improperly constructed; and the paint on the outside of the house slaked off the first month. There is some testimony to the contrary with respect to part of the construction but in considering the motion for judgment notwithstanding the verdict all testimony must be considered in a light most favorable to the party against whom the motion is sought and every reasonable intendment deducible from the evidence is to be indulged in such party's favor. Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547 (1962); Texas Employers Ins. Ass'n v. Smith, 235 S.W.2d 234 (Tex.Civ.App.—Galveston, 1950, writ ref'd).

We are not unmindful of the many cases cited and argued by appellant, but believe none of them announced rules applicable to the instant case. For example, appellant cites and relies upon Cannaday v. Martin, supra, in which a part of the contract to construct a building was in writing

3. Texas Pacific Coal & Oil Company v. Stuard, 7 S.W.2d 878 (Tex.Civ.App.—Eastland, 1928, writ ref'd).

and part oral. We are quite familiar with that case and do not consider it applicable to the theory upon which the instant case was tried. There the only description whatever of the building forming the basis for damages for failure to construct a commercial building on Lot 13, Block 85 in Floydada was an oral agreement. Recovery was sought on that oral agreement as part of a written agreement whereby the Cannadays sold the Martins Lots 14, 15 and 16 and constructed a commercial building thereon. The theory of damages was that failure to construct a building by the Cannadays on Lot 13 reduced the value of the Martin building, the contract for the construction of which was in writing. The contract forming the basis of recovery there was clearly partly oral, whereas, in our case recovery was sought and allowed on an implied warranty of construction in a good and workman-like manner for that which was constructed under the written contract providing for a finished house. Stated another way, the action here is for damages for failure of appellant to do the things impliedly imposed upon it by the written contract. All rights for which appellees seek redress arose by virtue of the agreement between the parties, which was a contract in writing. Article 5527, the four-year statute of limitations, includes " * * * actions for debt where the indebtedness is evidenced by or founded upon any contract in writing * * *"

■ "It is settled that the term 'action for debt' as used in the above article [Art. 5527] includes all suits brought to recover money without regard to any technical distinction between debt and damages." Miller v. Kountze Corporate School Dist., 54 S.W.2d 344 (Tex.Com.App.1932).

The contractor used as a witness by appellees, Mr. Staloch, testified in effect that regardless of the price range of the home, the type workmanship he testified about in the Bell house was not done in a good and workman-like manner. In speaking of the different price range homes he said of the workmen: "If they do good work on a high price, as we are talking about houses in a certain price as compared with houses in a lower price range, I would think they would do the same kind of work on one as they would on another." The testimony here shows the carpenters had some of their ten, eleven and twelve year old boys working on the house. When Mr. Bell complained he was told they were short handed and those were the people they had to work.

■ Under the theory upon which the case was tried, and the authorities cited, we hold the two-year statute of limitations was not applicable.

■ The next two points concern the submission of Special Issue No. 11 to the effect that appellees had actual knowledge of the defects before entering into possession of the premises. The jury found the Bells signed the "Certificate of Acceptance" but in Special Issue No. 11 found that at the time of signing the instrument they neither knew nor should they have known of the defects in the construction. The points as presented constitute "no-evidence" points, so it is academic that if there is more than a scintilla of probative evidence to support the issue the points are without merit.

■ Mr. Bell's evidence shows he observed the incorrect placement of the door during construction, so the trial court refused to submit an issue on that part of the poor workmanship. He also noticed the carpenters were placing several boards in the floor without nailing them and then would nail the outside of a group of boards. When he questioned them they told him that was a new way of putting the floors down. Not being a carpenter, we do not believe he would be bound by knowledge of lack of good and workman-like manner of construction concerning the floors until they buckled, which was subsequent to signing the instrument. The same would be true concerning the weather stripping

on the doors and windows, latent defects. A different situation exists as to the back door, the kitchen sink, and cabinets, but since recovery was not allowed on them, those defects are not material. Mr. Bell admitted he complained during construction about not having a linen closet in the bathroom but his recovery was for lack of construction in a good and workman-like manner of the one then constructed. He then testified those items were the only ones he noticed during the construction of the house. The jury had the right to believe him. Considering the record as a whole, we believe there is probative evidence to support the issue as to the items upon which the court allowed recovery. It has been textually stated that: "An express or implied acceptance of work as in compliance with a building contract operates as a waiver of defective performance, *but this rule is inapplicable where the acceptance was under protest * * * or where the defects were latent and unknown to the owner."* * * * "An acceptance must be voluntary in order to constitute a waiver, and an acceptance under protest is not a waiver." 17A C.J.S. Contracts § 514 (2) a, pp. 840, 842. (Emphasis added).

The Texarkana Court of Civil Appeals has held that even though the owners of the home upon which improvements were made signed an affidavit that the work of the contractors was completed to their satisfaction, they were not estopped from later setting up a cross-action for defective work. Clem Construction Co. v. Parker, 272 S.W. 228 (Tex.Civ.App.—Texarkana, 1925, no writ). The points are overruled.

The next two points assert error of the court in receiving a verdict based upon Special Issues 1, 4 and 6 because they were answered by the jury in a sum of money not supported by the evidence and for permitting Mr. Staloch to testify that "profit" was an element of appellees' damages. We believe there is merit to appellant's contention on these points.

Appellees' expert witness, Mr. Staloch, testified it would cost $400 to correct the floors and the jury allowed $500. He testified it would take $60 to $75 to correct the linen closet and the jury allowed $86.50. He testified it would cost $200 to $250 to paint the house and the jury allowed $287.50. It is true he later testified that a contractor "as such" would probably add ten to fifteen per cent to that amount. He did not say a carpenter would do so, and we do not believe appellant would be bound to send a contractor to correct the construction. Therefore, there is no evidence to support the amount the jury awarded in these three instances.

Accordingly, the judgment of the trial court is reversed and remanded unless appellees within ten days from the date of announcement of this opinion file their remittitur in the sum of $149. If they do so within such time, the judgment of the trial court will be affirmed with the judgment reduced to the amount of $1,092.25.