## MILLER et al. v. KOUNTZE CORPORATE SCHOOL DIST. et al.

### No. 1592—5967.

Commission of Appeals of Texas, Section A.
Nov. 9, 1932.

A. D. Lipscomb, Howth, Adams & Hart, and Elton Cruse, all of Beaumont, for plaintiffs in error.

Oswald S. Parker and W. D. Gordon, both of Beaumont, and James F. Parker and A. L. Bevil, both of Kountze, for defendants in error.

CRITZ, J.

This suit was originally filed in the district court of Jefferson county, Tex., on October 2, 1928, by E. J. Miller and J. H. Yentzen against Kountze corporate school district, and a number of other parties.

We shall hereafter refer to the parties in the order in which they appeared in the district court, to Miller and Yentzen as plaintiffs, and the Kountze corporate school district et al. as defendants.

[1] The plaintiffs filed this suit in the district court of Jefferson county on October 2, 1928. Defendants duly filed their plea of privilege to be sued in the district court of Hardin county, Tex. On January 21, 1929, the district court of Jefferson county heard and sustained the defendants' plea of privilege, and ordered the case transferred to the district court of Hardin county. Plaintiffs excepted to this order and gave notice of appeal, but filed no appeal bond and never took any steps to perfect the appeal. The order therefore became final without appeal.

An examination of the statute, article 199, R. C. S. 1925, shows that Hardin county is a part of the Seventy-Fifth judicial district, composed of the counties of Hardin, Liberty, Tyler, and Chambers. Under the above statute the district court of Hardin county has three 4-week terms per year beginning on "the first Monday in January and on the nineteenth and thirty-third Mondays after the first Monday in January of each year."

An examination of the record discloses that the transcript in this case was not filed in the district court of Hardin county until August 17, 1929.

From the statement we have made it will appear that, at the time the order was made on January 21, 1929, by the district court of Jefferson county transferring the case to the district court of Hardin county, the district court of Hardin county had twelve days remaining of its January term. It further appears by calculation that the next or second term of the Hardin county district court began on May 20, 1929, and expired by operation of law on June 15, 1929. The third term of the Hardin county district court began on the 26th day of August, 1929, and expired on the 21st day of September, 1929.

It will appear from the statement above that plaintiff, having filed his transcript in the Hardin county district court on August 17, 1929, allowed twelve days of the January, 1929, term of the district court of Hardin county, and all of the May term, 1929, to expire before filing the transcript of the case in the district court of Hardin county. They filed it before the August, 1929, term began.

The record further shows that the case was not finally called for trial and dismissed until June 6, 1930. On that date the district court of Hardin county sustained defendants' motion to dismiss and plea of limitation, and finally dismissed the case. On appeal this judgment was affirmed by the Court of Civil Appeals. 35 S.W.(2d) 1076. Plaintiffs bring error. We refer to the opinion of the Court of Civil Appeals for further statement.

It appears from the statement we have made and the record that the District Court of Hardin County dismissed this case on two grounds: (a) Because the plaintiff allowed an unreasonable time to elapse between the sustaining of the plea of privilege by the district court of Jefferson county, and the filing of the transcript and papers in the district court of Hardin county; (b) because plaintiffs' petition shows upon its face that the cause of action therein attempted to be alleged was barred by limitation at the time the original petition was filed in the district court of Jefferson county as to all issues and all defendants.

If either of the above grounds of dismissal are good, the judgments of the two lower courts should be affirmed; if both are erroneous, such judgments should be reversed and the cause remanded to the district court.

Articles 2019 and 2020, R. C. S. 1925, read as follows:

"Art. 2019. If a plea of privilege is sustained, the cause shall not be dismissed, but the court shall transfer said cause to the court having jurisdiction of the person of the defendant therein; and the costs incurred prior to the time such suit is filed in the court to which said cause is transferred shall be taxed against the plaintiff."

"Art. 2020. When a plea of privilege is sustained, the court shall order the venue to be changed to the proper court of the county having jurisdiction of the parties and the cause. The clerk shall make up a transcript of all the orders made in said cause, certifying thereto officially under the seal of the court, and send it with the original papers in the cause to the clerk of the court to which the venue has been changed."

■ An examination of these statutes shows that they provide in substance that, when a plea of privilege is sustained, the cause shall not be dismissed, but transferred to the proper court of some county having jurisdiction of the parties and the cause. It is also provided that the clerk shall make up a transcript of the orders of the original court, etc., and send it with the papers to the clerk of the court to which the venue is changed. It will be noted that the statutes nowhere expressly limit the time in which the transcript and papers can be filed in the court to which the case is removed. Furthermore, the statutes do not, by any express language, define whether it is the plaintiffs' or the defendants' duty to see that the transfer is effected, and the case duly filed in the second court. Under such conditions, since the plaintiffs were prosecuting the suit, we think it was their duty to, within a reasonable time, take steps to effect the actual filing of the cause in the second court.

■ Defendants contend that, since it was the duty of the plaintiffs, after the cause was ordered transferred, to actually effect the consummation thereof, their delay in doing so from January 21, 1929, until August 17, 1929, during which time a part of the January, 1929, and all of the May, 1929, terms of the district court of Hardin county expired, constituted in law and in fact an abandonment of the suit by the plaintiffs. In this connection defendants contend that they were injured by the delay, in that they were not in as good position to secure testimony when the case was called for trial as they would have been in had the transfer been made promptly. Defendants offered testimony to support their contention of injury, and we presume in favor of the judgment of the trial court that such testimony is true. There is no testimony in the record showing that during the time intervening between the sustaining of the plea of privilege and the filing of the cause in the second court the plaintiffs did any act or made any statement which would lead the defendants to believe that they intended to abandon the suit.

■ Under the above record, we hold as a matter of law that the trial court erred in dismissing this suit on the ground of aban-

donment. The record before us shows that the plaintiffs have not been guilty of any negligence in bringing it to trial after its actual filing in the district court of Hardin county. We do not think that the delay in effecting the actual transfer of the cause from one court to the other was sufficiently long to constitute an abandoned suit in the sense that the Hardin county district court, by such delay, lost jurisdiction to try it. Loftus v. Beckmann (Tex. Com. App.) 1 S.W.(2d) 268. If the case had been promptly transferred, and the trial delayed until August 17, 1929, certainly no court would permit it to be treated as an abandoned suit. We see no difference in the two instances; that is, we see no difference between delaying the transfer and delaying the trial after transfer as applied to the law of an abandoned suit.

In the case of Flanagan v. Smith, 21 Tex. 493, our Supreme Court held that, where plaintiff failed to take action by continuance or otherwise in a case in the justice court for four years, he released the defendant and abandoned the suit. It was also there held that a shorter time may justify the same conclusion under some circumstances. We are aware of no authority in this state which holds that the delay which here transpired would deprive the court of jurisdiction to try the case or work a release of the cause of action. If the plaintiffs had done some act, or made some statement during the delay, which justified the defendants in concluding that they did not intend to prosecute the suit further, and if defendants had acted to their injury, on such acts or statements, we would have a different question. No such case is presented here. All the plaintiffs were guilty of was a mere failure to effect the transfer for the time shown.

Our holding to the effect that the trial court erred in dismissing this cause as an abandoned suit makes it necessary for us to pass on the question as to whether the plaintiffs' petition is subject to the special exception that it affirmatively discloses upon its face that the cause of action therein attempted to be alleged was barred by the two-year statute of limitation as to all the defendants and all of the relief sought at the time the suit was filed in the district court of Jefferson county on October 2, 1928.

The petition is very long and complicated. It is therefore not expedient for us to attempt to make a full statement of all its allegations. In its opening paragraph it states that plaintiffs complain of Kountze corporate school district (later alleged to be an independent school district duly incorporated under the laws of Texas), J. B. Hooks, W. R. Robertson, Thomas B. Coe, J. O. Fountain, Bud Hooks, Nick Matthews, Frank Crews, James F. Parker, J. C. Alsup, E. L. Adams, L. M. Adams, W. B. Livesay, N. E. Widemann, and E. M. Pitts.

The petition then alleges that about November 6, 1925, plaintiffs and the school district entered into a certain written contract whereby the plaintiffs agreed and bound themselves to build for the district a certain schoolhouse at an agreed price of $15,700, payable 85 per cent. on estimates approved by the architect, and the balance when the job was finished and accepted. It is then alleged that, at the time the above contract was entered into, the district had $20,000 of funds on hand in its depository bank lawfully available to pay for said building and carry out the contract. It is here alleged that the defendants, E. L. Adams, L. M. Adams, E. M. Pitts, and J. O. Fountain were the sureties on the depository bond.

The petition then alleges that the plaintiffs began the building of the schoolhouse and furnished labor and material therefor to the amount of $2,954.60; that the estimate for same was approved by the architects and check was issued to them for 85 per cent., leaving a balance due on this estimate of $445.19; that this check was paid; that plaintiffs then continued work on such building, and prior to February 10, 1925, furnished additional labor and material to the extent of $3,589.70; that the architects approved this estimate, and check was issued to the plaintiffs for $3,051.25, being 85 per cent. of such sum; that, when this check was issued and delivered to the plaintiffs, the depository bank was insolvent and under control of the state banking department, and therefore such check was never paid; and that, in addition to the labor and material represented by the above estimates, plaintiffs made additional expenditures for labor and material during the two weeks ending February 24, 1925, in the sum of $3,500, for which the architects approved their estimate, but no check has ever been issued to them therefor. From the above the plaintiffs alleged that they hold unpaid estimates duly approved against the district in the total sum of $7,834.89.

The petition then alleges that the fund on deposit in the depository bank has been made away with by the defendant J. O. Fountain, who was president of said bank, by defalcation, but that the defendants and each of them have unlawfully refused to take any steps to recover the school fund from said Fountain or any of the sureties on the depository bond of such bank.

It is then alleged that, after the happening of the above events, the school district notified plaintiffs that it had no funds to complete said building, and released them from any further obligation to complete the same, but that no part of the sum owing to the plaintiffs has ever been paid. It is then alleged that, if the plaintiffs had been permitted to complete such building, they would have made a profit of $1,500. From the above the plaintiffs conclude and allege that

they have been damaged in the sum of $9,-334.89, with interest from the date they would have completed said building, which they allege would have been not later than March 15, 1925.

It is difficult to make a statement of the balance of the plaintiffs' petition. We therefore reproduce it. It is as follows:

"16. That plaintiffs believe that the defendant school trustees above named made no effort to collect upon the said bond executed by and on behalf of said bank as depository, but have colluded with said bank officers and sureties on said bond to allow the said officers and sureties to escape payment of their obligation, the payment of which, if made, would inure to the benefit of these plaintiffs for the protection of their rights as herein alleged; that as excuse for said failure to pursue said officers and sureties, it is asserted by defendants that said officers and bondsmen are insolvent, but if the said bondsmen are apparently insolvent, it is because (as plaintiffs believe and so charge), the said bondsmen have transferred all of their property and effects, subject to execution, unto defendant, J. B. Hooks and plaintiffs believe that such transfers were colorable and on some species of trust, and that the property so transferred is held by defendant, J. B. Hooks, for the benefit of said bondsmen; plaintiffs believe and would show to the court that such property, so transferred to the said J. B. Hooks, is sufficient to make good the defalcations of the said bank officers and sufficient to enable the said school district to collect sufficient funds for the payment of its said indebtedness to plaintiffs, and, in view of the failure of said trustees to sue for the plaintiffs' benefit, the plaintiffs are entitled to sue said bondsmen and said J. B. Hooks as they are herein sued. The property referred to as being in the hands of said J. B. Hooks is all that property which has been transferred to said J. B. Hooks, since the date of the purported contract of plaintiffs with said district, by each and all of the said sureties on the bond of said bank.

"17. The said bond is described as follows:

"On or about the time of the deposit of the funds of the said Corporate School District in said bank, the said bank executed a bond, approved by the school board on Feb. 12, 1925, in the sum of Thirty Thousand Dollars ($30,-000.00), with the said E. L. Adams, L. M. Adams, E. M. Pitts and J. O. Fountain as sureties, and the said bank and said sureties obligated themselves in the sum of Thirty Thousand Dollars ($30,000.00) unto J. B. Hooks, President of the School Board of Kountze Independent School District so called (intending to name thereby the Kountze Corporate School District of Hardin County, Texas) and his successors in office, conditioned that said bank would faithfully discharge its duties as depository of the said funds; that thereup-on the said trustees of such district deposited in said bank the said funds so realized from the sale of bonds in the amount of $20,-000.00, for which sum the said bank and its sureties became liable under the provisions of said bond, and no part of said sum has been paid to said school district or to anyone for its account so far as known to these plaintiffs, except the payment made to these plaintiffs on the first estimate as hereinabove set out; that all of the said sums remain now due and payable, and the aforesaid bank is wholly insolvent; its affairs wound up by receiver appointed under the state law, and its corporate charter forfeited; that all of the funds of said bank were appropriated to his own use by the manager thereof, the said J. O. Fountain, or to the use of him and the sureties on the said bond, or to him and them and trustees of said school district, all to the damage and injury of plaintiffs in the amount of about Nine Thousand Five Hundred Dollars ($9,500.00), in violation of the Constitution of the United States as aforesaid.

"18. Plaintiffs further show to the court that defendant school district, besides the money obtained from bonds above referred to, which has been lost through defalcation of the said bank officer or officers, and through failure of the defendant school trustees to pursue the sureties on said bond, the defendant school district has obtained the sum of about Ten Thousand Dollars ($10,-000.00) as the result of an insurance policy on another and different building in the same district, which was destroyed by fire and now has the said sum of $10,000 available for payment of the costs of construction of buildings, but the defendant school trustees, and each of them, wholly fail and refuse to appropriate or pay any part of said sum upon the above claims of plaintiffs; that the said school trustees are now proposing to expend said $10,000.00 in payment to other persons not parties to this suit for material and labor to be mingled indistinguishably with the material and labor placed by said plaintiffs upon said building, and for the completion of same; that said course on the part of said trustees would result in consuming all of the said $10,000.00 and would be wholly inequitable, unjust and unconscionable; that without this court's most gracious writ of injunction to prevent defendants from so appropriating said funds to the exclusion of plaintiffs, and from mingling the proposed new improvements with the improvements constructed at the cost of plaintiffs, the plaintiffs have no plain, adequate and complete remedy."

We interpret the prayer to ask for relief as follows: (1) A temporary injunction to be made permanent on final hearing. The temporary injunction was not granted and we are not interested in this feature further; (2) that the defendants, who are trustees, be

required to pay the plaintiffs' demand against the district out of a fund of $10,000 on hand belonging to the district, which is alleged to be the proceeds of a fire insurance policy on another school building which was burned; or (3) that plaintiffs have judgment against all of the above trustees individually and personally and against J. O. Fountain and the other sureties on the depository bond, individually and personally; or (4) that a mandamus issue to the defendants who are school trustees requiring them to institute suit against the sureties on the depository bond, and against J. B. Hooks, as assignee of the property of such sureties, and requiring them, upon collection of such funds, to apply them pro tanto to the payment of plaintiffs' claims; or (5) that plaintiffs have judgment directly against the defendants who are sureties on the depository bond and J. B. Hooks for such amount as the district could recover from them; and (6) for costs of suit and general and equitable relief.

The petition contains other matter, but we deem our statement sufficient to answer the purposes of this opinion.

Now it must be borne in mind that we are not here passing on the general demurrer; neither are we passing on whether this petition is subject to special exception or exceptions as to form or substance except the bare issue as to whether it shows upon its face that all causes of action against all parties defendant are barred by the two-year statute of limitation. This being the case, we take it for granted for the sole purpose of passing on the exception of limitation that the petition otherwise states a cause of action against some of the defendants.

Article 5527 provides in substance that actions for debt evidenced by or founded on a contract in writing are governed by the four-year statute of limitation. It is settled that the term "action for debt" as used in the above article includes all suits brought to recover money without regard to any technical distinction between debt and damages. Texarkana & Ft. Smith Ry. Co. v. Houston Gas & Fuel Co., 51 S.W.(2d) 284 (Tex. Com. App. opinion adopted) and authorities there cited. We think that, when we come to consider the plaintiffs' petition as a whole, they are attempting to assert a cause of action against some of the defendants based on the two written contracts, viz. their contract with the district, and the depository bond. It does not appear on the face of the petition that any cause of action plaintiffs have against the district, whether for debt or damages, is barred by limitation; and neither does such appear as to any cause of action the district has on the depository bond. Such being the case, it appears to us that, if it be admitted that the plaintiffs have a right to require the trustees to pay them out of the alleged $10,-000 fund, or if they have the right to compel the trustees to sue the sureties on the bond, and pay them out of any judgment recovered by such action, or if they have the right to pursue such bond directly, none of such rights are barred by limitation, because the four and not the two year statute would apply.

Again referring to the effect of this petition, we wish it to be distinctly understood that we are not passing upon the question as to whether the plaintiffs can recover in this action under the allegations of their petition. That matter is not before us. We are merely passing on the special exception to the effect that the petition shows upon its face that any cause of action therein alleged is barred by the two-year statute of limitation. In respect to that matter, we hold that the trial court erred in sustaining such exception.

We recommend that the judgments of the Court of Civil Appeals and district court be both reversed, and the cause remanded to the district court.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.