[No. 1585-2.    Division Two.    May 24, 1976.]

MARGARET M. HULL, *Appellant*, v. ENGER CONSTRUCTION COMPANY, ET AL, *Respondents*.

---

[14]*Friedlander v. Friedlander*, 80 Wn.2d 293, 298, 494 P.2d 208 (1972).

*Paul N. Luvera, Jr., Bart G. Irwin,* and *Wilson, Platt, Johnson & Irwin,* for appellant.

*Robert L. Israel, Kinne F. Hawes, Lane, Powell, Moss & Miller, John Patrick Cook, John F. Biehl, Lee, Smart, Cook, Dunlap & Biehl, P.S., Ron J. Perey,* and *Reed, McClure, Moceri & Thonn,* for respondents.

PEARSON, J.—Plaintiff Margaret Hull appeals from a judgment following a defense jury verdict in favor of defendants Enger Construction Company and Norman Olsen and wife. The amended complaint sought recovery for personal injuries and damages arising from a falling incident which occurred May 15, 1970, as plaintiff was exiting a newly constructed faculty lounge at the Chimacum School, where she was employed as a teacher.

Specifically, plaintiff contended that a defectively designed and installed threshold at one entrance to the facility caused her fall. Defendant Olsen was the design architect who selected the subject Pemko 139A water-return threshold. Employees of Enger Construction Company, the general contractor, installed the threshold in question. The new addition was accepted by the school district approximately a month prior to plaintiff's injuries, although the district had assumed occupancy of the building 2 weeks earlier.

Each defendant denied negligence and asserted contributory negligence as an affirmative defense. Each also filed a third-party complaint seeking indemnity from Chimacum School District. The indemnity theory was grounded on allegations that school district employees had not given notice to either the architect or the contractor that several

of its employees had complained of problems with the threshold prior to plaintiff's accident.

In a pretrial order based upon a stipulation of all counsel, the third-party indemnity complaints were severed from the personal injury trial. The order provided that the school district's attorney would be allowed to participate actively in the trial. Ostensibly, this participation was for the purpose of determining the liability of the school district to plaintiff for whatever relevance that determination might have to the postponed indemnity action. However, the school district did not participate in the trial. At the commencement of the trial a motion by defendants was granted prohibiting plaintiff from bringing before the jury any matter pertaining to the severed indemnity suits. Since plaintiff had not sued the school district, evidence pertaining to the school district's claimed negligent acts or omissions was allowed for the purpose of establishing the intervening negligence defense asserted by the contractor and architect.

At the conclusion of the testimony, the trial court denied motions by the defendants challenging the sufficiency of plaintiff's evidence. As stated above, the jury verdict favored the defendants. On appeal plaintiff objects to several evidentiary rulings and asserts as error the giving or refusal to give certain instructions.

Before addressing those issues, it is necessary first to consider the contention of each defendant that the asserted errors were not prejudicial and that the trial court should have granted their respective motions to dismiss.

■ The requisite standard for ruling on motions which challenge the sufficiency of evidence is axiomatic. Such motions admit the truth of appellant's evidence and all inferences reasonably drawn therefrom and require the evidence to be interpreted most strongly against the moving party. No element of discretion is involved. The motion can be granted only when the court can say, as a matter of law, there is no substantial evidence to support the claim.

*Davis v. Early Constr. Co.,* 63 Wn.2d 252, 386 P.2d 958 (1963).

Applying this standard to plaintiff's claim against each defendant, we are persuaded that the motion of defendant Enger Construction Company should have been granted, but that the motion of defendants Olsen was properly denied.

Certain evidence was undisputed. The threshold in question was selected by the architect for use on the project. The contractor had no choice but to install the Pemko 139A. The contractor's liability, if any, to plaintiff necessarily had to relate to a defective installation proximately causing her injuries.

There was testimony which would allow a reasonable inference that the threshold in question was not tightly screwed to the floor. Several witnesses testified that it was "loose" or "wobbly" both before and shortly after the accident. (There was contrary evidence on this point as well.) However, plaintiff's own description of her accident totally rejects any reasonable inference that a defect in installation caused her injuries. She stated and repeated several times in her testimony that as she stepped on the threshold the heel of her left shoe became lodged in the open, protruding lip of the threshold and that for several seconds she attempted to pull her shoe out. She stated, "The heel was up against that ledge apparently and so I just pulled and my foot came out of it [the shoe] and it threw me."

Plaintiff specifically denied that the threshold was loose or that looseness had anything to do with her fall. It is thus obvious that plaintiff's description of her accident causally relates her injuries to the design of the threshold and not to any alleged improper installation. Accordingly, the motion for a dismissal by Enger Construction Company should have been granted and the ultimate judgment dismissing the complaint against it should be affirmed.

On the other hand, the motion to dismiss made by defendants Olsen was properly denied. The basis of the motion is the asserted failure of plaintiff to establish that

Olsen violated a professional standard of care in selecting the Pemko 139A interlocking water-return threshold. We think there is a basic answer to this argument. Assuming arguendo that expert testimony is generally necessary to establish the negligence of an architect for a "design" defect,[1] we are of the opinion that testimony introduced on behalf of plaintiff did rise to the quality necessary to establish the violation by defendant of the requisite standard of care.

Considering plaintiff's expert evidence most favorably to plaintiff, the following inferences are reasonable. Selection of the appropriate type of threshold requires consideration of a combination of factors. The Pemko 139A type is recommended for entrances where the traffic is relatively light and where wind and rain conditions make it necessary to have a tight seal with a water return to keep moisture away from the indoor surface. In heavier traffic entrances, the safer, flatter (saddle) threshold is preferred and can be modified to reduce the amount of intruding water. Given the conditions existing here, i.e., relatively heavy traffic with a wind and rain exposure, but with covered area some 11 feet outside the doorway, a saddle threshold, which had been recommended by a hardware consultant, was a safer design and should have been selected. This evidence was sufficient to establish prima facie the violation of a professional standard of care in the selection of the Pemko 139A design.

■ Furthermore, expert testimony is not required in all cases of professional malpractice to establish prima facie negligence by the professional. Where negligence is such that laymen are capable of recognizing it as a departure from recognized standards, expert testimony is generally not required. *See Stafford v. Hunter*, 66 Wn.2d 269, 401 P.2d 986 (1965); *see generally* Annot., 81 A.L.R.2d 597, 608 (1962).

In our opinion, once the availability and feasibility of

---

[1]Plaintiff has not argued against the necessity for establishing that the architect violated a professional standard of care.

safer designs for the required purpose were established by expert testimony, judging the architect's decision to select the Pemko 139A threshold was wholly within the comprehension of laymen. There was testimony that any threshold presents a tripping hazard because it changes the elevation of the surface. The Pemko 139A is recognizably more hazardous than the flatter, saddle type because it protrudes higher above the floor surface. Additionally, the surface of the Pemko 139A is interrupted by a gap of sufficient width to accommodate the narrow heel of a woman's shoe. The lip of the leading edge of the Pemko 139A, is also such that a heel of any size could catch and cause a fall.[2] Given the expert testimony that a safer type of threshold would be satisfactory for use in the doorway in question, we believe the jury was capable of judging whether selection of the more dangerous type constituted professional negligence.

Turning to the appeal in chief, we are persuaded that at least one instruction containing an erroneous statement of the law prevented plaintiff from receiving a fair trial against defendant Olsen.

Over plaintiff's objection, the court permitted in evidence three contract documents relating to the construction project. Exhibit 91 was the agreement between Olsen and the school district; exhibit 92 was the agreement between Enger Construction Company and the school district; and exhibit 93 was the general conditions of the contract applying to the three involved parties. The agreements described the various duties and responsibilities of the three, including indemnity agreements, exculpatory clauses, provisions for liability insurance, and many other provisions relevant

[2]Following is an illustration of the Pemko 139A (cross section).

to the indemnity action which was not being tried, and was of no relevance to plaintiff's action. Defendants' purpose in having those documents presented to the jury is obvious. The exhibits afforded a basis upon which each defendant could argue that the blame for plaintiff's accident was on the school district. In this sense the exhibits were clearly prejudicial to plaintiff.

It is true as Olsen contends, plaintiff sought to establish that Olsen had violated his contractual obligation to inspect the premises so as to discover defects in construction. It is also true that the contract required the school district to give the architect notice of defects in construction which came to its attention, and there was evidence that the school district employees were aware that some thresholds were loose prior to plaintiff's accident.[3] Furthermore, Olsen contends that plaintiff made no attempt to have nonrelevant portions of the contracts excised. *See Jackson v. Standard Oil Co.*, 8 Wn. App. 83, 505 P.2d 139 (1972); *Nordstrom v. White Metal Rolling & Stamping Corp.*, 75 Wn.2d 629, 453 P.2d 619 (1969).

Assuming arguendo that these reasons offered sufficient grounds for admitting the documents into evidence, we think reversible error was committed when the court permitted the jury to determine the legal relevancy of the documents.[4]

---

[3]Defendant Olsen contends that the intervening negligence of the school district insulated him from liability.

[4]Instruction No. 16A provided:

"Evidence has been introduced in this case consisting of contract documents between the architect, school and contractor for the limited purpose of helping you understand the evidence as it was presented to you during the trial. The contract exhibits introduced herein do not, of themselves, relieve either party to this lawsuit of liability for their negligence, if any. The contracts between the owner and the architect and the owner and the contractor are evidence in this case which you may consider only to the extent that they set forth the rights and duties of the parties to the contracts. *To the extent the provisions of the contracts are not relevant to the facts of this case, you are not to consider them.* This evidence shall be considered by you only in connection with all other exhibits introduced into evidence, the testimony of witnesses and these instructions." (Italics ours.)

■ It is not the province of the jury to pass on the admissibility of evidence. *See State v. Elder*, 70 Wn.2d 414, 423 P.2d 533 (1967). Admissibility of evidence, which requires a determination of its relevance, is wholly within the province of the court. Furthermore, the construction of written instruments generally and a determination of the legal duties imposed by such instruments is a question of law for the trial court and not for the jury. *See State v. Comer*, 176 Wash. 257, 28 P.2d 1027 (1934); *Keeter v. John Griffith, Inc.*, 40 Wn.2d 128, 241 P.2d 213 (1952). Since the instruments contain nonrelevant provisions on which the jury's verdict might conceivably have been based, plaintiff was clearly prejudiced by the instruction which permitted the jury to determine the relevancy of the documents.

■ We see no relevancy of these three exhibits on retrial where plaintiff's theory of recovery against defendant Olsen will be limited to the question of defective design of the threshold. Intervening negligence of the school district in failing to warn Olsen of alleged *defective installation* of the threshold does not furnish a defense to the *defective design* theory, nor is it relevant to that issue. Also, on retrial it will not be proper to instruct the jury on duties which the school district might separately owe to plaintiff as her employer. These duties have no bearing on defendant Olsen's potential liability to plaintiff for selection of an alleged defective design. Accordingly, the court's instruction No. 14 should not be given. We concur in the rulings of the court which severed the crossclaims for indemnity and which precluded the interjection of those claims into the personal injury action.

■ The only remaining question raised by plaintiff which requires consideration is whether or not the trial court erred in refusing to allow plaintiff to show that the Pemko 139A threshold was replaced by the saddle-type threshold after her injuries. We think the evidence should be allowed. Since *Brown v. Quick Mix Co.*, 75 Wn.2d 833, 454 P.2d 205 (1969), evidence of safety measures taken after an accident is admissible when the question of practi-

cality or feasibility is made an issue by either plaintiff or defendant. Here the question of practicality was clearly in issue. Olsen denied that the safer saddle threshold was efficient to keep out weather and keep in the heat. Plaintiff's evidence was to the effect that the saddle threshold was sufficient under the circumstances and posed less hazard to persons walking over it than the Pemko 139A. It therefore appears the issue of practicality with respect to the replacement threshold's utility was part of the plaintiff's case. The offered evidence was relevant and should have been admitted. *See Bartlett v. Hantover*, 84 Wn.2d 426, 526 P.2d 1217 (1974).

We point out that the usual rationale against admission of post-accident safety measures is not applicable in this case. That rationale is the fear that the jury will use the fact of remedial measures as an admission of negligence and thus discourage such measures. E. Cleary, *McCormick's Handbook of the Law of Evidence* § 275 (2d ed. 1972). But here Olsen instigated the remedial measures solely at the direction of the school district and not of his own volition. A carefully worded cautionary instruction should be sufficient to deter use of this evidence by the jury to infer an admission of negligence on Olsen's part.

Affirmed in part, reversed in part, and a new trial ordered on plaintiff's action against defendant Olsen.

PETRIE, C.J., and REED, J., concur.

Petitions for rehearing denied July 27, 1976.

Review denied by Supreme Court November 23, 1976.