687 P.2d 1275

**Seabrook W. WOODWARD, Jr., and Susan Woodward, husband and wife, Plaintiffs/Appellants,**

v.

**CHIRCO CONSTRUCTION CO., INC., an Arizona corporation, Defendant/Appellee.**

No. 2 CA–CIV 4772.

Court of Appeals of Arizona, Division 2.

Jan. 12, 1984.

Philip Jones, Tucson, for plaintiffs/appellants.

Bury & Moeller by David C. Bury, Tucson, for defendant/appellee.

## OPINION

BIRDSALL, Chief Judge.

This action was brought in the superior court to recover damages sustained by the appellants as a result of negligence and breach of implied warranty of habitability in the construction of their new home by the appellee Chirco Construction Company.[1] The trial court found that the appellants had failed to prove a prima facie case of negligence and that the statute of limitations barred the claim under the warranty. We hold that the warranty claim was not barred and reverse.

The written agreement to purchase the property including the residence which was being constructed by the appellee-seller was made March 1, 1971. The sale closed April 23. Construction was completed about that time and the appellants assumed possession and occupied the home.

During the first year the appellants noticed some cracking in the outer walls of the home, some doors out of alignment and some warping of floor tile. In a letter to the appellee dated May 18, 1972, they described a "hugh vertical crack" in the masonry on the east side of the home. In December 1974 the appellants discovered a large crack in the concrete slab beneath the tile floor in the foyer. It was about an inch wide in places and ran the entire width of the home from north to south. Using a coat hanger one could touch soil at the bottom of the crack. The problems increased. New cracks formed. The fireplace began to separate from the wall. The wall in the family room moved forward creating an uneven surface. The kitchen ceiling began to bow and the floor warped.

The appellee repaired the visible damage in June 1972 and in the fall of 1975 the appellee reinforced the foundation on the east side of the home. However, the damage continued and the appellee made no further attempts to repair. The evidence showed damages as great as $29,000. The lawsuit was commenced May 17, 1976, with the filing of the complaint.

## The Negligence Claim

■ The trial court dismissed this claim after presentation of the appellants' evidence because no construction expert testified that it was a standard in the community to obtain a soil test prior to new construction. The court relied on *Miller v. Los Angeles County Flood Control District*, 8 Cal.3d 689, 106 Cal.Rptr. 1, 505 P.2d 193 (1973). That decision is in point and persuasive. It involved the construction of a new home in the Sunset Canyon area of the city of Burbank. The home was built in a direct line with the natural water runoff. A dam-like structure above the home filled from a rainstorm and overflowed, not only demolishing the structure but drowning Mrs. Miller. The builder was made a defendant on the theory of alleged negligence in design and construction. No expert witness testified to the reasonable construction practices of builders in the area or to the proper standard. The trial court nonsuited the Millers because of their failure to present evidence of that essential element of their case.

In *Miller*, as in the instant case, the plaintiffs contended that the trial court erroneously required this proof since the jury should have been allowed to determine from their own experiences whether the builder acted reasonably. The *Miller* court quoted from *People v. Cole*, 47 Cal.2d 99, 103, 301 P.2d 854, 856 (1956) that "the decisive consideration in determining the admissibility of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." The *Miller* court then went on to say:

"... it was not for nonexpert minds to determine whether Noble Manors failed to exercise due care in the construction of the home. Building homes is a compli-

---

1. A fraud count was dismissed at the com-    mencement of trial.

522

cated activity. The average layman has neither training nor experience in the construction industry and ordinarily cannot determine whether a particular building has been built with the requisite skill and in accordance with the standards prescribed by law or prevailing in the industry. In the instant case, the issue as to whether or not the Miller home had been negligently constructed involved a multitude of subsidiary questions bearing not only upon the erection of the structure itself but also upon the location of the house on the particular lot, the elevation of the lot, the influence of the surrounding terrain, the possibility of run-offs and floods, and the existence of the debris dam. These were not questions which the jury could have resolved from their common experience and the trial judge properly concluded that the issue of the allegedly negligent construction of the Miller residence was one within the knowledge of experts only." 106 Cal.Rptr. at 10, 505 P.2d at 202.

In a footnote which we find illustrative of the foregoing legal proposition, the *Miller* opinion notes:

"We exclude from consideration those failures on the part of the builder which are so obvious, if not bizarre, that they present no problem in the determination of his negligence, as for example the installation of a fireplace without a chimney or of a second floor without any means of access to it." Id., n. 15.

In the instant case, the gist of the appellants' negligence count was that a soil sample taken at commencement of construction would have revealed a problem which would then have required extra measures in the construction of the foundation of the home. These extra measures would have included, at a minimum, the use of rebar and deeper footings. They produced as an expert witness a civil engineer who had conducted a study in 1969 of the soils in the subdivision where the appellants' home was built. From the analysis of borings taken in that area, a soils engineering report was prepared and delivered to another engineering firm. Since the test results indicated a problem, the report made construction recommendations to limit what would otherwise result in damage caused by unusual settling and shifting of structures built there. No evidence shows that the appellee ever saw this report or that it was made available.

The expert witness also conducted tests in 1979 for the appellants at their home and testified to those results. They showed generally the same soil problems discovered in 1969. He testified that the cause of the appellants' damage was the soil condition. He also examined, as best he could, the construction of the home and found that Chirco had not employed at least some measures, for example, the rebar, that his 1969 report had recommended.

However, the appellants' expert was unable to qualify as an expert on construction standards. He could not answer the pivotal question: would a reasonable builder in Tucson have obtained a soil test prior to construction? It is a paradox that the testimony of this witness concerning the reasons for getting a soil test and the intricacies of construction illustrates the reasoning of the *Miller* court.

We agree that the holding in *Miller* is applicable. *See also Aetna Insurance Company v. Hellmuth, Obata & Kassabaum, Inc.,* 392 F.2d 472 (8th Cir.1968); *Hull v. Enger Construction Company,* 15 Wash.App. 511, 550 P.2d 692 (1976) and *Seiler v. Levitz Furniture Company,* 367 A.2d 999 (Del.Supr.1976) all cited by the appellant but which are distinguishable because of their facts. All of these cases recognize that the law requires expert testimony when a layman is not competent to judge whether or not a particular practice is negligent.

In Arizona the decisions involving the necessity to show the standards of care by expert testimony have been concerned with medical malpractice. *See McWain v. Tucson General Hospital,* 137 Ariz. 356, 670 P.2d 1180 (1983), where we reviewed those decisions. The law which the trial court followed is consistent with the evidentiary requirements in such cases.

We hold the trial court properly dismissed the appellants' negligence count.

### Breach of Implied Warranty

■ We first address the appellee's argument that Arizona does not recognize that a homebuilder makes an implied warranty that the construction will be done in a workmanlike manner and that the structure will be habitable. This issue was specifically addressed by Division One of our court in a well reasoned opinion. *Columbia Western Corporation v. Vela,* 122 Ariz. 28, 592 P.2d 1294 (App.1979). We have already recognized that decision in *Richards v. Powercraft Homes, Inc.,* 139 Ariz. 264, 678 P.2d 449, approved in part in *Richards v. Powercraft Homes, Inc.,* 139 Ariz. 242, 678 P.2d 427 (1984), and we follow it here. Such a warranty does exist in our state.

Considering next the trial court's finding that the statute of limitations barred the contract action we must determine which limitation statute is applicable. The appellant contends that the warranty breach comes within A.R.S. § 12–548, which provides:

"An action for debt where indebtedness is evidenced by or founded upon a contract in writing executed within the state shall be commenced and prosecuted within six years after the cause of action accrues, and not afterward."

The appellee, on the other hand, claims the action is not specifically within any special limitations statute and therefore comes under A.R.S. § 12–550:

"Actions other than for recovery of real property for which no limitation is otherwise prescribed shall be brought within four years after the cause of action accrues, and not afterward.",

or that it comes under A.R.S. § 12–542:

"... there shall be commenced and prosecuted within two years ... the following actions:

.    .    .    .    .

(3) For trespass for injury done to the estate or the property of another."

The trial court rejected the six-year statute as inapplicable to the case. We do not have the benefit of the trial judge's reasoning since he said only that "[t]his is not such an action." The court then said: "[o]therwise, the options are either under Title (sic) § 12–550...." The court did not indicate what other options it had in mind since it then went on to discuss another issue, i.e., when did the statute begin to run. Since the trial court found the statute commenced to run from completion of the construction, it apparently decided not to discuss other options since they provided even shorter periods of time. Under the four-year statute, if the cause of action accrued upon completion in 1971, then the complaint filed in 1976 was barred.

■ We agree with the appellant that the count for breach of implied warranty is an action for debt founded upon a contract in writing, and that the six-year statute of limitations is therefore applicable. Although the written agreement does not contain the promise to construct the home in such a way that it would be habitable for that purpose, that undertaking is implied in the contract. *Certain-Teed Products Corporation v. Bell,* 411 S.W.2d 596 (Tex.Civ. App.1967). In *Certain-Teed* the Texas court had to determine whether a two-year statute governing limitation of actions upon oral contracts [2] or a four-year statute for debt where the indebtedness is "founded upon any contract in writing" was applicable. The theory of the action was indistinguishable from the instant case. In deciding that the four-year statute controlled, the court found some general principles announced by the Texas Supreme Court applicable. The opinion quotes from *International Printing Pressmen and Assistants' Union v. Smith,* 145 Tex. 399, 198 S.W.2d 729 (1947):

**2.** A similar statute in Arizona, A.R.S. § 12–543(1), provides: "[t]here shall be commenced and prosecuted within three years after the cause of action accrues, and not afterward, the following actions: 1. For debt where the indebtedness is not evidenced by a contract in writing ...."

"... it is not indispensable that the written instrument relied upon contain an express promise to do the things for the nonperformance of which the action is brought. It is sufficient if the obligation or liability grows out of a written instrument, not remotely but immediately, or if the written instrument acknowledges a state of facts from which, by fair implication, the obligation of liability arises." 411 S.W.2d at 599–600.

It also cites the following language from another Texas Court of Civil Appeals decision, *Texas Pacific Coal & Oil Company v. Stuard*, 7 S.W.2d 878 (Tex.Civ.App.-Eastland, 1928):

"This obligation was in the minds of the parties and became a part of the written contract. The law is a part of every contract. The obligation to develop was therefore a written obligation, although not definitely expressed." 411 S.W.2d at 600.

In accord with *Certain-Teed* but considering whether the governing limitations statute is that applicable to contracts or that applicable to tort actions are *Kittson County v. Wells, Denbrook & Associates, Inc.*, 308 Minn. 237, 241 N.W.2d 799 (1976); *Beveridge v. King*, 50 Or.App. 585, 623 P.2d 1132 (1981); *Lloyd v. William Fannin Builders*, 40 Ohio App.2d 507, 320 N.E.2d 738 (1973).

The question under consideration is the subject of an annotation in 1 A.L.R.3d 914 (1965) entitled: "What statute of limitations governs action by contractee for defective or improper performance of work by private building contractor." The author states under the heading "Contract statutes versus tort statutes" (in Arizona, A.R.S. § 12–543 or A.R.S. § 12–548 versus A.R.S. § 12–542) that "[t]he cases appear to be in accord in holding that the plaintiff should be allowed the benefit of the contract statute, in which the period of limitation is usually longer than in the tort statute." Cited is *American Heating & Plumbing Co. v. West End Country Club*, 171 La. 482, 131 So. 466 (1930) which sup-

ports our holding as well as the conclusion of the author.

The reason that contract rather than tort statutes are applicable is expressed in *Securities-Intermountain v. Sunset Fuel Company*, 289 Or. 243, 611 P.2d 1158 (1980):

"We conclude that the phrase 'injuries to ... person[s] or to property' was thought to encompass what is commonly meant by 'personal injuries,' i.e. bodily injuries including their psychic consequences, and physical damage to existing tangible property, but not financial losses such as a reduced value of the completed project due to the unsatisfactory performance of the work or the added cost of satisfactory completion or replacement." 611 P.2d at 1162.

What is said by the Oregon court can just as well be directed to A.R.S. § 12–542(3). The latter statute applies to physical damage to existing property, not to damage resulting from an implied warranty of habitability.

The annotation also considers under another section written contract versus oral contract statutes. In Arizona this amounts to a consideration of A.R.S. § 12–548 versus A.R.S. § 12–543. Under that subtitle the author recognizes that it has been held in an action for breach of an implied warranty in the performance of a written contract that the warranty is implied in the writing and that the statute governing written contracts applies. Cited in support of that statement is *Economy Fuse & Mfg. Co. v. Raymond Concrete Pile Co.*, 111 F.2d 875 (7th Cir.1940).

■ The defense of the statute of limitations is not favored by the courts, and where two constructions are possible, the longer period of limitations is preferred. *O'Malley v. Sims*, 51 Ariz. 155, 75 P.2d 50, 115 A.L.R. 634 (1938); *San Manuel Copper Corporation v. Redmond*, 8 Ariz.App. 214, 445 P.2d 162 (1968); *Continental Casualty Company v. Grabe Brick Co.*, 1 Ariz.App. 214, 401 P.2d 168 (1965).

The appellee argues that the six year statute, A.R.S. § 12–548 is not applicable for two reasons. First, without citation of authority, it contends that the action is for damages and not for debt. We do not agree with this distinction. In *Miller v. Kountze Corporate School Dist.*, 54 S.W.2d 344, 348 (Tex.Com.App.1932) the court held that the term "action for debt" as used in their statute (comparable to A.R.S. § 12–548) "includes all suits brought to recover money without regard to any technical distinction between debt and damages." This comports with two other Arizona statutes defining debt. A.R.S. § 44–1001(4) a part of the Uniform Fraudulent Conveyance Act, defines debt to include "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." Similarly the garnishment statutes provide that: "... [t]he term 'debt' includes every claim or demand for money, not arising from tort." A.R.S. § 12–1571(A)(1)(b). We hold that the term "debt" in A.R.S. § 12–548 includes an action for "damages" for breach of contract.

Second, the appellee contends that the action is not "based" upon a contract in writing. Although we have discussed this contention, we have not distinguished the Arizona case cited. The appellee relies upon *Kersten v. Continental Bank*, 129 Ariz. 44, 628 P.2d 592 (App.1981). In that case the plaintiffs brought an action for an alleged breach of an oral promise to lend money. In order to come within the longer limitation period afforded for a written contract, the plaintiffs argued that a mortgage purporting to incorporate by reference certain promissory notes constituted the necessary writing. The court held that in order to qualify for the six-year statute the promise itself had to be written. The mortgage did not include any promise to lend. This is far different from the instant case since the promise to build the home implicitly included the promise that the construction would result in a habitable structure.

The Division One opinion in *Kersten* relies upon an opinion of this court, *Beane v. Tucson Medical Center*, 13 Ariz.App. 436,

477 P.2d 555 (1970), in which we said: "[i]n order for a cause of action to be founded upon a contract in writing, the instrument *itself* must contain an undertaking to do the thing for the nonperformance of which the action is brought." 13 Ariz.App. at 438, 477 P.2d at 557. We do not retreat from that language, nor do we disagree with *Kersten*. However, since the promise to build necessarily includes the promise to build a habitable home, the action comes within the statute.

The language in the written instrument in *Beane* upon which the patient relied was contained in the financial agreement:

"8. FINANCIAL AGREEMENT: The undersigned agrees, whether he signs as agent or as patient, that *in consideration of the services to be rendered* to the patient, he hereby individually obligates himself to pay the account of the hospital in accordance with the regular rates and terms of the hospital. Should the account be referred to an attorney for collection, the undersigned shall pay reasonable attorney's fees and the collection expense. All delinquent accounts bear interest at the legal rate." (Emphasis supplied) 13 Ariz.App. at 437, 477 P.2d at 556.

The claim that the use of the word "services" in that context could lead to the breach of a written agreement arising from the hospital's alleged failure to render proper post-operative care is readily distinguishable from the appellant's position in the instant case. In *Beane* the writing is an agreement by the patient to pay. There was no *written undertaking* by the hospital to provide proper care and treatment. We further held in *Beane* that:

"... A cause of action is not upon a 'contract founded upon an instrument in writing' merely because it is in some way remotely or indirectly connected with the instrument or because the instrument would be a link in the chain of evidence establishing the cause of action ...." 13 Ariz.App. at 438, 477 P.2d at 557.

**526**

In the instant case the "promise to build" is the very undertaking contained in the written agreement.

Since the contract between the parties was made March 1, 1971, that was the earliest possible date the statute could have begun to run. Since the action was filed May 17, 1976, it was not barred by the applicable six-year statute and the dismissal of the contract count was error.

In view of our disposition of this appeal, we do not address the questions of when the statute began to run, or whether it was tolled by the appellee's attempts to repair.

Affirmed as to the negligence count. Reversed as to the contract count. Remanded for further proceedings.

HATHAWAY and HOWARD, JJ., concur.