AMY JAY, Plaintiff-Appellant, v. UNITED DEFENSE INDUSTRIES, INC., Defendant-Appellee (The Palmer House Company *et al.*, Defendants).

First District (2nd Division)   No. 86—2912

Opinion filed October 20, 1987.

Jay A. Baier, Ltd., of Chicago (Jay A. Baier and Joseph P. Schreiber, of counsel), for appellant.

Bullaro & Carton, of Chicago (John J. Bullaro, Jr., and Raymond R. Pesavento, of counsel), for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff-appellant Amy Jay appeals from a summary judgment entered in favor of United Defense Industries, Inc. (United), on the ground that United did not assume liability for Jay's injuries when it purchased the business of Defense Products Manufacturing Corporation (Defense Corporation). The only issue presented for review is whether the award of summary judgment was proper. We affirm in part, and reverse and remand in part.

Jay was allegedly assaulted and raped at the Palmer House Hotel in Chicago on May 1, 1982. During the course of the attack, she tried to defend herself by spraying her assailant with an aerosol chemical defense weapon known as "Paralyzer," a product similar to tear gas, which was warranted to "instantly stop even a 300-pound man up to twenty minutes." The Paralyzer was designed, manufactured, and distributed by Defense Corporation, a defendant in the circuit court but not a party to this appeal.

On February 8, 1984, Jay filed the instant action against the Palmer House and its security personnel, alleging that the rape was a direct and proximate result of their negligent failure to provide adequately for her safety. On April 24, 1984, she initiated a similar action in Arizona State court against United and Defense Corporation, both of which are companies incorporated in that State. Subsequent to the filing of the original action in Illinois against the Palmer House and

the security personnel, but prior to the initiation of the Arizona suit, United purchased the business of Defense Corporation.

The contract of sale, executed in Arizona and dated March 16, 1984, contained, among others, the following provisions:

Paragraph 2:

"Seller is now conducting the business of Defense Corporation, under the trade name "Paralyzer, Repulse" ***. The Seller shall sell to Buyer [United] and Buyer shall purchase from Seller this business, *subject to the liabilities and encumbrances*, upon the terms and conditions set out in this agreement." (Emphasis added.)

Paragraph 7:

"Buyer will not assume any of the Seller's *accounts payable or other debts*, except those enumerated below. These shall remain Seller's obligations and Seller will indemnify Buyer against any loss that he may suffer by reason of Seller's failure to pay any of them. However, Buyer will assume the liability for the following lawsuits and judgments.

1. Oliver Pilcher of Scottsdale v. Defense Corp./Defense Products

Maricopa Cause No. C 482075

2. Superock Development Corp. v. Defense Corp./Defense Products

Maricopa Cause No. C 488414

3. Daystar, Inc. v. Defense Corp./Defense Products

Maricopa Cause No. C 458804—Judgment in the amount of $17,448.40

4. Texas Lawsuit v. Defense Corp. being defended by Canadian Universal Insurance Company Limited." (Emphasis added.)

Paragraph 14:

"Seller represents and warrants the following:

\* \* \*

(d) no judgments, liens, actions or proceedings are presently outstanding or pending against the business or Seller personally, except those listed in Paragraph 7."

By agreement of all the parties, the Arizona suit was dismissed and United and Defense Products were joined in this action In Illinois on July 17, 1985, by an amendment to Jay's complaint. The amendment also added four counts to her original complaint (count II through count V), two of which sounded in contract, and two of which stated a cause of action in tort. In count II, one of the tort claims,

Jay alleged that the Arizona defendants either supplied a product that would not function properly, failed to warn of the defective condition of the product, failed to manufactuie a safe product, or failed to test the Paralyzer to determine if it would operate properly, and that "as a direct and proximate result of the failure of the defendants' 'Paralyzer' to operate in the manner indicated by the defendants" she was raped. Counts III and IV sounded in contract, wherein Jay alleged that the defendants breached an implied warranty of merchantability by selling a product which was unfit for the purpose for which it was sold, "a direct and proximate result" of which was she was assaulted and raped, or that they breached an express warranty of merchantability that the Paralyzer would "instantly stop even a 300 pound man up to twenty minutes," and that this breach also directly and proximately caused the rape. Finally, in count V Jay alleged that the defendants were strictly liable in tort for the injuries she suffered because the Paralyzer was "unreasonably dangerous and defective when it left the possession of the defendants."

In response to these new allegations, United's counsel, who represented both Defense Corporation and United in the circuit court, and represents United here, filed a motion for summary judgment on behalf of only United, asserting that United had not expressly or impliedly agreed to assume any debts or liabilities of Defense Corporation, except those lawsuits specifically delineated in paragraph 7 of the contract referred to above. Jay in turn filed a motion to disqualify the firm from representing United, because, she argued, by filing its motion for summary judgment, the firm was not acting in the best interests of Defense Corporation, its other client. In addition, Jay filed a memorandum in opposition to United's summary judgment motion in which she argued that the contract of sale was ambiguous concerning the liabilities assumed by United and that, therefore, extrinsic evidence should have been considered by the trial court in order to determine the intent of the contracting parties.

As indicative of the intent of the parties, Jay attached two items to the memorandum: first, a letter from the attorney who represented United in the matter of the sale to Glen and Blanche Meinert, the principals of United, bearing the same date as that of the contract; and second, a transcript of the deposition testimony of John Boal, a director of Defense Corporation. A portion of the letter stated:

> "While I know you advise me you are purchasing the liabilities of Defense Corporation, there is no delineation of what those liabilities are other than certain lawsuits. Even then, it is not clear as to what your liabilities are or potentially are, under

those suits. You should at least review the complaints and have a status report on each piece of litigation to have some concept of what you are purchasing."

The relevant portion of the deposition testimony reads as follows:

"[Jay's Counsel]: So is it your understanding from the conversations, that it was the interpretation of these two lawyers that Mrs. Meinert or her corporation would be liable for any future claims that arose by virtue of the product paralyzer made by Defense Corporation?

[United's Counsel]: Objection. Let me just say form and foundation. You can answer it.

[Mr. Boal]: Yes."

On September 18, 1986, the trial judge gave his oral opinion, which first denied Jay's motion to disqualify the law firm. He then proceeded to find that United did not assume liability for Jay's injuries, reasoning that:

"[P]laintiff erroneously contends that United has assumed liability for this case under the contract of March 16, 1984. Plaintiff points out that [paragraph 2] of the contract states that [United] shall purchase the business subject to the liabilities and any encumbrances. However, [paragraph 7] states specifically that [United] does not assume [Defense Corporation's] liabilities except for four named lawsuits. The contract must be read as a whole with a view to giving effect to all language in the contract. *** The contract is clear and explicit as to [United's] assumption of liabilities."

No appeal was taken from the court's ruling regarding the disqualification of United's lawyers. However, Jay does appeal the finding that United did not assume any liability for her injuries.

■■ Initially, we note that the contract of sale states that "[t]his agreement shall be construed in accordance with the laws of the State of Arizona, the State in which the business is located." As mentioned earlier, both United and Defense Corporation are Arizona corporations, and their sale agreement was executed in that State. We note also that under accepted Illinois conflict of laws principles, "the law of the place where the contract is performed and executed is applicable in determining the validity, construction and obligations of the contract." (*Boise Cascade Home & Land Corp. v. Utilities, Inc.* (1984), 127 Ill. App. 3d 4, 12, 468 N.E.2d 442.) Accordingly, the parties agree that Arizona law governs their rights and responsibilities herein.

In reviewing a summary judgment based upon an interpretation

of a contract, Arizona law is hardly any different from ours: "the proper inquiry is whether there were genuine issues of material fact; only if there were none might [a party] have been entitled to judgment as a matter of law." (*Frey v. Stoneman* (1986), 150 Ariz. 106, 109, 722 P.2d 274, 277.) Even if the facts are indisputable, "summary judgment is not proper if the evidence is of such a character that reasonable minds could draw different conclusions or inferences therefrom." (*Wagner v. City of Globe* (1986), 150 Ariz. 82, 83, 722 P.2d 250, 251.) In addition, the court "must view the facts and evidence in a light most favorable to the party against whom summary judgment was entered." *Cecil Lawter Real Estate v. Town & Country Shopping Center Co.* (1984), 143 Ariz. 527, 533, 694 P.2d 815, 821.

When the terms of an agreement are clear and unambiguous, the construction of a contract is a question of law for the court. (*Leikvold v. Valley View Community Hospital* (1984), 141 Ariz. 544, 548, 688 P.2d 170, 174.) However, though the initial conclusion of whether a contract is ambiguous is a question of law, the appellate court is not bound by the trial court's ruling on that question. (*Cecil Lawter Real Estate v. Town & Country Shopping Center Co.* (1984), 143 Ariz. 527, 533, 694 P.2d 815, 821.) It is clear that "[a]n agreement is ambiguous if the language used by the parties can reasonably be construed in more than one sense and such construction cannot be determined within the four corners of the instrument." (*Cecil Lawter Real Estate v. Town & Country Shopping Center Co.* (1984), 143 Ariz. 527, 533, 694 P.2d 815, 821.) Once a contract is determined to be ambiguous, extrinsic (parole) evidence may be resorted to for the purpose of ascertaining the true meaning of the contract. (*Associated Students of the University of Arizona v. Arizona Board of Regents* (1979), 122 Ariz. 100, 584 P.2d 564.) Where there is a conflict in the evidence presented to resolve the ambiguity, it is for the trier of fact to resolve the conflict by determining the intent of the parties in executing the instrument. (*Fairway Builders, Inc. v. Malouf Towers Rental Co.* (1979), 124 Ariz. 242, 250, 603 P.2d 513, 521.) In such cases, summary judgment is not appropriate. (*Cecil Lawter Real Estate v. Town & Country Shopping Center Co.* (1984), 143 Ariz. 527, 533, 694 P.2d 815, 821.) However, "when there is no conflict in the evidence presented to resolve the ambiguity, summary judgment may be appropriate." (*Cecil Lawter Real Estate v. Town & Country Shopping Center Co.* (1984), 143 Ariz. 527, 533, 694 P.2d 815, 821.) Therefore, whether summary judgment was proper herein depends upon two questions: (1) was there an ambiguity in the contract; and (2) if so, was there a conflict in the evidence presented to resolve such ambiguity?

United argues that the contract of sale was unambiguous and clearly delineated the liabilities it accepted. In support of this argument, it agrees that paragraph 2 of the contract clearly specifies that United purchased Defense Corporation "subject to [its] liabilities and encumbrances," but it proposes that this general provision is qualified by the specific language of paragraph 7. According to its interpretation of paragraph 7, United claims it is liable only for the four lawsuits cited therein, relying on well-established law that in cases in which there is an inconsistency in a contract, specific language controls over general provisions. (*Autonumerics, Inc. v. Bayer Industries, Inc.* (1984), 144 Ariz. 181, 188, 696 P.2d 1330, 1337.) United concludes that the trial court properly construed the sale contract as absolving United of any liability for Jay's injuries, and summary judgment was appropriate.

█ In contrast, Jay argues that paragraph 2 controls the outcome herein since under that provision United purchased the business "subject to the liabilities and encumbrances" of Defense Corporation. In support of this assertion, Jay proposes that paragraph 7, the only other provision of the contract dealing with the liabilities of the respective businesses, excepts only "accounts payable or other debts" from United's general assumption of liability. Jay argues that the four new counts she added to her complaint do not seek to recover on a debt or an account payable, and therefore, her inchoate cause of action must be defined as a liability which United has expressly assumed under paragraph 2.

Whether the contract was ambiguous obviously depends on whether Jay's lawsuit can be considered as coming within the "accounts payable or other debts" provision of paragraph 7. Clearly, Jay's potential recovery cannot be classified as an account payable. The term "debt," however, is not so easily construed. We note that it has been defined in one Arizona case in the context of a homeowners' action against a builder to recover damages sustained as a result of alleged negligence, *i.e.*, failure to make a soil test prior to construction, and breach of implied warranty of habitability in the construction of their new home. (*Woodward v. Chirco Construction Co.* (1984), 141 Ariz. 520, 687 P.2d 1275.) The court in that case first upheld the trial judge's determination that the homeowners had failed to prove a *prima facie* case of negligence "because no construction expert testified that it was a standard in the community to obtain a soil test prior to a new construction." (141 Ariz. 520, 521-23, 687 P.2d 1275, 1276-78.) Hence, the court determined that the trial court properly dismissed the homeowners' tort claim. The court then considered

whether the statute of limitations barred the claim under the warranty.

Appellee, the Chirco Construction Company, proposed that the six-year statute of limitations for "action for debt where indebtedness is *** founded upon a contract in writing" should not apply because the suit sought damages rather than collection of a debt. The court rejected this argument, holding that a claim based on a breach of an implied warranty of habitability was an action for a debt founded upon a contract in writing, to which the six-year statute of limitations indeed applied. (*Woodward v. Chirco Construction Co.* (1984), 141 Ariz. 520, 523, 687 P.2d 1275, 1278.) After duly noting that the defense of the statute of limitations is not favored by the courts, the court proceeded to reason:

> "[Appellee] contends that the action is for damages and not for debt. We do not agree with this distinction. In *Miller v. Kountze Corporate School Dist.*, 54 S.W.2d 344, 348 (Tex. Com. App. 1932) the court held that the term 'action for debt' as used in their statute (comparable to [the Arizona statute of limitations]) 'includes all suits brought to recover money without regard to any technical distinction between debt and damages.' This comports with two other Arizona statutes defining debt. A.R.S. sec. 44—1001(4), a part of the Uniform Fraudulent Conveyance Act, defines debt to include 'any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent.' Similarly the garnishment statutes provide that: '*** [t]he term "debt" includes every claim or demand for money, not arising from tort.'" (141 Ariz. 520, 525, 687 P.2d 1275, 1280.)

The court then stated its holding:

> "We hold that the term 'debt' in [the statue of limitations provision] includes an action for 'damages' for *breach of contract.*" (Emphasis added.) 141 Ariz. 520, 525, 687 P.2d 1275, 1280.

We fail to discern any distinction between this reasoning in *Woodward*, based, as it is, on breach of an implied warranty of habitability, and the counts of Jay's amended complaint which are predicated on breaches of implied and express warranties of merchantability. We therefore hold that the trial court in the case at bar properly granted summary judgment in favor of United on counts III and IV, the counts of Jay's amended complaint which sounded in contract.

However, in light of the fact that the trial court in *Woodward* properly dismissed the tort claim, that case is not helpful to us in determining whether Jay's inchoate tort liability case, expressed in

counts II and V, can also be defined as a "debt." We find no pertinent authority to the effect that latent tort damages are a debt. Moreover, we have no way of ascertaining whether the four lawsuits delineated in paragraph 7 are actions on a debt. If the record had indicated that these suits were based in tort, that would illuminate the issue as to whether or not the parties intended that other unmatured tort liabilities, such as Jay's action herein, were or were not assumed by United. However, since the record is incomplete in this regard, we are constrained to perceive the word "debt" in paragraph 7 of the sale contract to be ambiguous, and question whether as a matter of law it can be equated with the term "liabilities" in paragraph 2.

■ Since there appears to be an ambiguity in the contract, the law is clear that extrinsic evidence should have been considered by the trial court in order to glean the intent of the contracting parties. (*Associated Students of the University of Arizona v. Arizona Board of Regents* (1979), 122 Ariz. 100, 584 P.2d 564.) As noted earlier, in the summary judgment proceedings in the trial court, Jay introduced a letter from United's attorney and the deposition testimony of a former director of Defense Corporation in order to show such intent. Jay argues that the letter from United's attorney was probative of United's understanding of the agreement with respect to its liabilities, and that Boal's testimony illustrated Defense Corporation's understanding that United, by the terms of the agreement, accepted liability for all future lawsuits. In contrast, United argues that the letter indicates that United's attorney assumed that there were only four lawsuits for which his client accepted liability, and that Boal's testimony merely illustrates that the parties, at the time of the execution of the contract, did not contemplate the apportionment of liability for lawsuits other than those specified in the contract. We agree with Jay that these conflicting interpretations of the evidence need to be resolved by the trier of fact. (See *Cecil Lawter Real Estate v. Town & Country Shopping Center Co.* (1984), 143 Ariz. 527, 533, 694 P.2d 815, 821; *Fairway Builders, Inc. v. Malouf Towers Rental Co.* (1979), 124 Ariz. 242, 250, 603 P.2d 513, 521.) Accordingly, we hold that the trial court erred in granting summary judgment on counts II and V.

■ We now address, and summarily reject, Jay's additional argument that summary judgment was improper under the Arizona Bulk Transfers Act (Ariz. Rev. Stat. Ann., ch. 14, par. 44—2801 *et seq.* (1984)). The Arizona court has made it quite clear that that Act protects only "persons who were creditors of the seller at the time of the disputed sale; those whose claims came into existence at a time subsequent to the transaction are held not to be within the purview of the

acts." (*Del E. Webb Hotel Co. v. Bentley* (1968), 8 Ariz. App. 408, 412, 446 P.2d 687, 691.) Obviously, Jay cannot be deemed a creditor of Defense Corporation at the time of the disputed sale in view of the fact that her suit was not filed until after the transaction was completed.

For the foregoing reasons, the decision of the trial court is affirmed as to counts III and IV, and reversed and remanded for trial on counts II and V.

Affirmed in part; reversed and remanded in part.

STAMOS and HARTMAN, JJ. concur.